IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-876

 Filed: 20 March 2018

Orange County, No. 11 JT 6

IN THE MATTER OF: Z.D.

 Appeal by Respondent-Mother from order entered 11 May 2017 by Judge

Joseph M. Buckner in District Court, Orange County. Heard in the Court of Appeals

22 February 2018.

 Edward Eldred, Attorney at Law, PLLC, by Edward Eldred, for Petitioner-
 Appellees.

 Peter Wood for Respondent-Appellant Mother.

 No brief for Guardian ad Litem.

 McGEE, Chief Judge.

 Where the evidence and findings of fact do not support the trial court’s

conclusion of law that grounds existed for termination of Respondent-Mother’s

parental rights, we reverse the trial court’s order. Respondent-Mother

(“Respondent”) appeals from the trial court’s order terminating her parental rights

as to her son (“her son,” “the son,” or “the child”) in this private termination action.

Grounds for the termination were neglect, failure to make reasonable progress to

correct the conditions that led to the removal of the son from Respondent’s care, and

dependency.
 IN RE: Z.D.

 Opinion of the Court

 I. Facts and Procedural History

 The Orange County Department of Social Services (“DSS”) received a report

on 4 October 2010 alleging that (1) Respondent was neglecting her son due to

Respondent’s mental health issues and drug use, (2) Respondent was leaving her son

in unsafe situations in the home, and (3) Respondent was choosing unsafe childcare

arrangements. Three days later, on 7 October 2010, Respondent left her son with a

woman while she went to the grocery store. Respondent had just met the woman

earlier that day. Respondent did not return to the woman’s home to pick up her son,

and later that evening family members located the son at the woman’s home and he

was placed with caretakers. Respondent was involuntarily committed to the hospital

the next day. Respondent was later released from the hospital, and Child Protective

Services provided in-home services.

 Respondent was admitted to the UNC psychiatric clinic in January 2011 and

was diagnosed with bipolar 1 disorder. DSS filed a juvenile petition on 25 January

2011, alleging that the child was a dependent and neglected juvenile. In an order

entered 22 March 2011, the trial court adjudicated the child dependent but did not

consider or rule upon the petition’s neglect allegations. The trial court granted

temporary custody to the child’s “initial kinship” caregivers. Respondent received

outpatient mental health services from February 2011 to March 2012. Respondent

 -2-
 IN RE: Z.D.

 Opinion of the Court

was then referred to the UNC Chatham Assertive Community Treatment (“ACT”)

Team, and has continued to work with the ACT Team.

 After a review hearing on 2 June 2011, the trial court found that the caregivers

were no longer able to care for the child and placed him in DSS custody. DSS

subsequently placed the child in a kinship placement with Mr. and Mrs. J

(“Petitioners”), who were friends of Respondent. The trial court granted legal custody

of the child to Petitioners on 8 August 2012 and he has remained in their care since

that time. The trial court granted Respondent a minimum of one hour of supervised

visitation every two weeks and relieved DSS and the guardian ad litem of further

responsibility in the case.

 Petitioners moved to Pennsylvania in 2014 and Respondent’s visitation was

changed to one week of visitation every three months at Petitioners’ home.

Respondent’s visits went well, but she continued to struggle with mental health

issues. From 2011 to 2015, Respondent was admitted for multiple psychiatric

hospitalizations, both voluntary and involuntary. Despite Respondent’s

hospitalizations, Petitioners were committed to returning the child to Respondent’s

care.

 However, on 17 July 2015, Petitioners filed a motion to modify visitation,

alleging that the visitation schedule at the time was not in the child’s best interest.

In an order entered 7 October 2015, the trial court modified visitation to no longer

 -3-
 IN RE: Z.D.

 Opinion of the Court

require that Petitioners allow Respondent to stay in their home during visits, but

continued the visitation schedule in all other respects.

 Respondent was last hospitalized due to her mental illness in November 2015

and, since her release in December 2015, Respondent has remained symptom free

from her bipolar disorder. However, Petitioners filed a petition to terminate

Respondent’s parental rights as to her son on 21 June 2016. The petition alleged the

grounds of (1) neglect, (2) failure to make reasonable progress to correct the

conditions that led to the son’s removal from Respondent’s care, and (3) dependency.

N.C. Gen. Stat. § 7B-1111(a)(1)-(2), (6) (2017). After a hearing on 17 April 2017, the

trial court entered an order on 11 May 2017 terminating Respondent’s parental rights

on all three alleged grounds. Respondent appeals.

 II. Analysis

 “This Court reviews a trial court’s conclusion that grounds exist

to terminate parental rights to determine whether clear, cogent, and convincing

evidence exists to support the court’s findings of fact, and whether the findings of fact

support the court’s conclusions of law.” In re C.J.H., 240 N.C. App. 489, 497, 772

S.E.2d 82, 88 (2015). “If the trial court’s findings of fact are supported by ample,

competent evidence, they are binding on appeal, even though there may be evidence

to the contrary.” Id. (citation and quotation marks omitted). We review de

novo whether a trial court’s findings support its conclusions. See In re S.N., X.Z., 194

 -4-
 IN RE: Z.D.

 Opinion of the Court

N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008) (citation omitted), aff’d per curiam, 363

N.C. 368, 677 S.E.2d 455 (2009).

 The trial court must make “specific findings of the ultimate facts established

by the evidence, admissions and stipulations which are determinative of the

questions involved in the action and essential to support the conclusions of law

reached.” Quick v. Quick, 305 N.C. 446, 452, 290 S.E.2d 653, 658 (1982). The trial

court’s ultimate findings “must arise ‘by processes of logical reasoning from the

evidentiary facts’ found by the court.” In re A.B., ___N.C. App. ___, ___, 799 S.E.2d

445, 450 (2017) (quoting In re Anderson, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602

(2002)); see also In re D.M.O., ___ N.C. App. ___, ___, 794 S.E.2d 858, 861 (2016) (“[A]

trial court must make adequate evidentiary findings to support its ultimate finding

of willful intent.” (citation omitted)).

 In the present case, the trial court made the following evidentiary findings of

fact in support of its conclusion that grounds existed pursuant to N.C. Gen. Stat. §

7B-1111(a)(1), (2), and (6) to terminate Respondent’s parental rights:

 7. Petitioners have known Respondent since she was a
 teenager and are intimately familiar with Respondent’s
 mental health issues and treatment. Respondent has a
 bipolar diagnosis. Since the [child] was placed with the
 caregivers in 2010, Respondent has had multiple episodes
 related to her mental illness that have left her incapable of
 properly caring for the [child]. Petitioners have had
 intimate knowledge of these episodes.

 ....

 -5-
 IN RE: Z.D.

 Opinion of the Court

10. However, Respondent’s behavior during visits in
Pennsylvania was consistently concerning and
demonstrated an ongoing and continuing inability to
provide proper care. In 2015, this [c]ourt changed the
visitation order to no longer require Petitioners to house
Respondent during her quarterly visits. Respondent’s
behavior in their home was disturbing and was adversely
impacting the [child]. Respondent has not always acted in
the [child’s] best interest during visits. By way of example,
during one visit, Respondent indicated she was hungry.
Petitioners allowed Respondent to take the [child] to a
restaurant. Respondent bought and ate food, but
Respondent did not buy anything for the [child]. By way of
further example, the [child] has directed Respondent to end
a visit early so that she might rest. While Petitioners have
felt comfortable leaving the [child] with Respondent in
their home for short unsupervised periods of time during
visits, Petitioners have never felt Respondent was capable
of supervising the [child] for any extended period of time.

11. Respondent has been working with the UNC ACT
(“Assertive Community Treatment”) team for several
years, since at least before Petitioners attempted to reunite
the [child] with Respondent in 2013. ACT provides “wrap-
around” services for individuals with significant mental
health concerns. Even with the provision of these intense
services, Respondent is unable to provide proper care for
the [child]. Dr. VanderZwaag testified Respondent would
be capable of parenting the [child] with assistance, but Dr.
VanderZwaag has never observed Respondent with the
[child]. Dr. VanderZwaag acknowledged Respondent was
last hospitalized due to her mental health illness in
December 2015, more than five years after this case began
due to similar mental health concerns.

12. Petitioners have observed Respondent over the course
of many years, and Petitioners have an intimate
familiarity with Respondent’s parenting abilities.
Petitioners are convinced Respondent lacks the ability to

 -6-
 IN RE: Z.D.

 Opinion of the Court

 properly care for the [child]. Petitioners would not hesitate
 to reunite the [child] with Respondent if they thought
 otherwise. Petitioners have allowed Respondent to have
 “extra” visitation outside of the court-ordered schedule.
 Petitioners did not file the termination petition lightly.
 The [c]ourt believes Petitioners and accepts their
 testimony as true.

The trial court then made the ultimate findings of fact that:

 13. Respondent has neglected the [child] and there is a
 reasonable probability Respondent would neglect the
 [child] if he were returned to her care.

 14. Respondent has willfully left the [child] in placement
 outside the home for more than twelve months without
 showing to the satisfaction of this [c]ourt that reasonable
 progress under the circumstances has been made in
 correcting those conditions which led to the removal of the
 [child].

 15. Respondent is incapable of providing for the proper
 care and supervision of the [child], such that the [child] is
 a dependent juvenile within the meaning of [N.C.]G.S. 7B-
 101, and there is a reasonable probability that such
 incapability will continue for the foreseeable future.
 Respondent lacks an appropriate alternative child care

 A. Reasonable Progress

 Respondent first asserts the trial court erred in terminating her parental

rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), which provides that the court may

terminate parental rights upon a finding that a parent has “willfully left the juvenile

in foster care or placement outside the home for more than 12 months without

showing to the satisfaction of the court that reasonable progress under the

 -7-
 IN RE: Z.D.

 Opinion of the Court

circumstances has been made in correcting those conditions which led to the removal

of the juvenile.” N.C. Gen. Stat. § 7B-1111(a)(2) (2017).

 Respondent contends the trial court’s findings of fact are insufficient to support

its ultimate finding that she failed to make reasonable progress in correcting the

conditions that led to her son’s removal in that the findings are vague and incomplete

and do not address her progress or lack of progress leading up to the termination

hearing. Therefore, Respondent contends the findings of fact are insufficient to

support the trial court’s conclusion that grounds existed to terminate her parental

rights pursuant to N.C.G.S. § 7B-1111(a)(2). We agree.

 The trial court must perform a two-part analysis to terminate parental rights

under N.C. Gen. Stat. § 7B-1111(a)(2). In re O.C. & O.B., 171 N.C. App. 457, 464, 615

S.E.2d 391, 396, disc. review denied, 360 N.C. 64, 623 S.E.2d 587 (2005).

 The trial court must determine by clear, cogent and
 convincing evidence that a child has been willfully left by
 the parent in foster care or placement outside the home for
 over twelve months, and, further, that as of the time of the
 hearing, as demonstrated by clear, cogent and convincing
 evidence, the parent has not made reasonable progress
 under the circumstances to correct the conditions which led
 to the removal of the child.

Id. at 464-65, 615 S.E.2d at 396.

 A parent’s reasonable progress “is evaluated for the duration leading up to the

hearing on the motion or petition to terminate parental rights.” In re A.C.F., 176 N.C.

App. 520, 528, 626 S.E.2d 729, 735 (2006). In the present case, however, the trial

 -8-
 IN RE: Z.D.

 Opinion of the Court

court did not make any findings regarding Respondent’s conduct or circumstances

over the fifteen months prior to the termination hearing.

 According to unchallenged finding of fact 3, the child was removed from

Respondent’s care due to Respondent’s mental health issues and drug use, and DSS’s

concern for the child’s care and well-being. However, a review of the record and

transcript shows that the trial court based its termination of Respondent’s parental

rights primarily on the issue of her mental health. Indeed, the trial court did not

make any findings regarding Respondent’s progress or lack of progress in correcting

her past drug use or the condition of her home at the time of the hearing. The trial

court essentially relied on three findings of fact in order to support its ultimate

finding and conclusion that grounds existed pursuant to N.C. Gen. Stat. § 7B-

1111(a)(2) to terminate Respondent’s parental rights. These findings, however, are

insufficiently specific to support the ultimate finding that Respondent failed to make

reasonable progress.

 In finding of fact 7, although the trial court found that Respondent had

multiple episodes relating to her mental illness since her diagnosis in 2011, the

finding fails to include any information pertaining to what constituted an “episode”

and the nature of the “episodes,” including Respondent’s condition and behavior

during an episode. The finding also lacks any details regarding how many or how

 -9-
 IN RE: Z.D.

 Opinion of the Court

often Respondent had episodes, when the last episode occurred, or how the episodes

“left her incapable of properly caring for [her son].”

 In finding of fact 10, the trial court found that Respondent’s behavior during

her visits with Petitioners was “consistently concerning” and “disturbing.” However,

the trial court failed to find with any particularity what behavior it found to be

“concerning” and “disturbing[,]” and whether this behavior related in any manner to

Respondent’s mental health and her ability to care for her son.

 In finding of fact 11, the trial court found that “[e]ven with the provision of [the

ACT] intense services, Respondent is unable to provide proper care for [her son].”

However, the trial court made no finding as to why or how, despite these services,

Respondent was not able to provide proper care for her son or what specifically she

was doing or not doing to address her mental health issues.

 The trial court’s findings demonstrate only that Respondent has had multiple

“episodes” since 2010 due to her mental health issues, that her last hospitalization

was in December 2015, that Respondent has been working with the UNC ACT team

for several years, and that she had exhibited some form of “concerning” and

“disturbing” behavior during visits. We conclude that these findings are insufficient

to support the trial court’s ultimate finding that, at the time of the termination

hearing in April 2017, Respondent willfully left her son in Petitioners’ care without

making reasonable progress to correct the conditions that led to his removal from her

 - 10 -
 IN RE: Z.D.

 Opinion of the Court

care. The findings fail to address any progress or lack of progress by Respondent in

correcting the conditions that led to her son’s removal in the months prior to the

termination hearing.

 Indeed, the evidence tended to show that Respondent had made significant

progress in addressing her mental health issues. Respondent’s psychiatrist testified

that Respondent had “shown progressive improvement overall,” noting that although

Respondent did have some episodes of illness over the past five years, she had been

free of all mood symptoms since the time of her last discharge in December 2015. The

evidence further showed that, although Respondent was at risk for future episodes,

as is the nature of a bipolar diagnosis, she had shown a growing understanding of

bipolar illness and her response to medications, had been stable for the fifteen months

prior to the termination hearing, and had been working with her psychiatrist about

recognizing early warning signs and interventions in order to prevent further

episodes. Respondent’s psychiatrist testified that Respondent was committed to

working on her mental health and in making changes to improve her mental health

stability, and that her overall prognosis was very good.

 Further, the evidence showed Respondent had been living in an apartment for

nearly four years, was in good standing with the housing authority, had a part-time

job, and received additional income through disability. The evidence also showed that

Respondent was free from drug use and that her history of substance use was “related

 - 11 -
 IN RE: Z.D.

 Opinion of the Court

[primarily] to . . . mood symptoms (i.e. lack of judgment and insight associated with

mania) and unrelated to an enduring pattern of disordered use.”

 Petitioners testified Respondent behaved inconsistently during the visits in

their home in Pennsylvania, stating that some visits went well, while in other visits

Respondent was “less bubbly” and in a depressed mood, was “off,” or was less engaged

with her son. However, Petitioners presented no further evidence of Respondent’s

lack of reasonable progress in addressing her mental health issues and they

presented no evidence regarding Respondent’s current drug use, employment, or

housing condition. Thus, we conclude Petitioners failed to present sufficient evidence

to meet the statutory requirement of clear, cogent, and convincing evidence that

Respondent had not made reasonable progress in correcting the conditions that led

to the removal of her son from her care.

 Because the evidence and findings were insufficient to support the trial court’s

ultimate finding that Respondent failed to make reasonable progress, we hold the

findings do not support the conclusion that grounds existed pursuant to N.C. Gen.

Stat. § 7B-1111(a)(2) to terminate Respondent’s parental rights. Therefore, the trial

court erred in terminating Respondent’s parental rights on this ground.

 B. Neglect

 Respondent next argues the findings of fact were insufficient to support

termination on the ground of neglect because the trial court made no findings

 - 12 -
 IN RE: Z.D.

 Opinion of the Court

regarding Respondent’s situation and condition at the time of the termination

hearing in order to show a likelihood of repetition of neglect. We agree.

 A trial court may terminate parental rights upon a finding that the parents

have neglected the juvenile within the meaning of N.C. Gen. Stat. § 7B-101(15).

N.C.G.S. § 7B-1111(a)(1). In relevant part, N.C. Gen. Stat. § 7B-101(15) (2017)

defines a neglected juvenile as one “who does not receive proper care, supervision, or

discipline from the juvenile’s parent, guardian, custodian, or caretaker; or who has

been abandoned; or who is not provided necessary medical care; or who is not provided

necessary remedial care[.]”

 “Where, as here, a child has not been in the custody of the parent for a

significant period of time prior to the termination hearing, the trial court must

employ a different kind of analysis to determine whether the evidence supports a

finding of neglect.” In re Pierce, 146 N.C. App. 641, 651, 554 S.E.2d 25, 31 (2001),

aff’d, 356 N.C. 68, 565 S.E.2d 81 (2002). The trial court must consider “evidence of

changed conditions in light of the history of neglect by the parent, and the probability

of a repetition of neglect.” Id. (citing In re Ballard, 311 N.C. 708, 714, 319 S.E.2d 227,

231 (1984)).

 Although the child was not previously adjudicated neglected, in finding of fact

3, the trial court found that, on 7 October 2010, Respondent left her son with a woman

she had just met earlier that day, and that Respondent did not return to the woman’s

 - 13 -
 IN RE: Z.D.

 Opinion of the Court

home to pick up her son. Respondent does not challenge this finding, and it is now

binding on appeal. See Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731

(1991). This finding supports the trial court’s ultimate finding that Respondent had

previously neglected her son. The evidentiary findings, however, are insufficient to

support the trial court’s ultimate finding that there was a reasonable probability that

the child would be neglected if returned to Respondent’s care.

 In finding of fact 7, the trial court discussed Respondent’s mental health

history, including her bipolar diagnosis and found that she “has had multiple episodes

related to her mental illness” since 2010. In finding of fact 10, the trial court found

that Respondent’s behavior during her visits in Pennsylvania “was consistently

concerning” and “disturbing[,]” “adversely impact[ed] the [child,]” and “demonstrated

an ongoing and continuing inability to provide proper care.” The trial court found in

finding of fact 11 that “[e]ven with the provision of [the ACT team] intense services,

Respondent is unable to provide proper care for [her son].”

 The trial court’s ambiguous findings provide little light on the circumstances

and condition of Respondent’s mental health issues at the time of the termination

hearing or the impact they had on the child. Although the trial court found that

Respondent’s behavior adversely impacted her son, the court’s findings are not

sufficiently specific to determine what behavior Respondent was exhibiting and how

that behavior negatively impacted her son.

 - 14 -
 IN RE: Z.D.

 Opinion of the Court

 The terms “concerning” and “disturbing” are subjective and, without further

explanation detailing the specific behavior in question and how that behavior

impacted Respondent’s ability to care for her son, this finding is insufficient to show

a likelihood that the child would be neglected if returned to Respondent’s care. For

example, while one individual may find swearing to be concerning or disturbing

behavior, this behavior does not necessarily pertain to a parent’s inability to provide

proper care for a child.

 The trial court further found that Respondent did not always act in the child’s

best interests during visits. In support of this finding, the trial court found that on

one occasion Petitioners allowed Respondent to take her son to a restaurant where

Respondent purchased food for herself but did not buy food for him. During another

visit, Respondent appeared tired and her son told her to go back to the hotel early so

that she might rest. However, the finding provides no detail regarding when these

instances occurred.

 At most, the trial court’s findings show that Respondent has had “multiple”

episodes since 2010, has exhibited some type of “concerning” or “disturbing” behavior

during some visits, did not purchase food for her son at a restaurant on one occasion

for an unknown reason, and was tired during one visit. These findings lack any

specificity regarding Respondent’s inability to provide proper care at the time of the

termination hearing in order to support a finding of a likelihood of repetition of

 - 15 -
 IN RE: Z.D.

 Opinion of the Court

neglect if her son was returned to her care. Therefore, we hold the findings are

insufficient to support the trial court’s ultimate finding and conclusion that grounds

existed to terminate Respondent’s parental rights pursuant to N.C. Gen. Stat. § 7B-

1111(a)(1).

 Further, the probability of repetition of neglect in this case is not shown by

clear, cogent, and convincing evidence. Mr. J testified that Respondent’s visits in

Pennsylvania went well, but sometimes she was less engaged or had a depressed

mood. Although the visits were supervised, Petitioners did leave Respondent alone

with her son for an hour or two at a time. Mr. J testified that Respondent’s last visit

in December 2016 was “a little choppy” because she arrived tired and showed up late

the next day. Additionally, Mr. J testified that Respondent was “off” in making good

decisions for her son, explaining that sometime “last year,” Respondent chose to get

portraits done of her son rather than purchase pull-ups for him, and on one occasion

she did not purchase food for him at a restaurant, though he did have a bite of the

food from her plate.

 Mrs. J testified that “almost a year” ago, she stopped allowing Respondent to

phone her son because Respondent refused to pick a particular day of the month to

call. Mrs. J further testified that during some visits Respondent was “absolutely

wonderful” and “so awesome with [her son]” but during some visits “she just wasn’t

there.”

 - 16 -
 IN RE: Z.D.

 Opinion of the Court

 Petitioners’ evidence pertained primarily to conduct occurring at least six

months prior to the hearing. This lack of temporal proximity simply does not support

a finding that Respondent was incapable of providing proper care at the time of the

termination hearing and that there was a likelihood of repetition of neglect. The most

recent example of Respondent’s inability to care for her son was that she appeared

tired at the December 2016 visit. Petitioners presented no evidence of Respondent’s

inability to properly care for her son at the time of the hearing other than their

assertions that they did not believe Respondent was capable. This is not clear, cogent,

and convincing evidence to support a finding that “there is a reasonable probability

Respondent would neglect [her son] if he were returned to her care.”

 Because the evidence and findings are insufficient to support a finding that the

child is likely to be neglected if returned to Respondent’s care, we hold the trial court

erred in terminating Respondent’s parental rights on the ground of neglect.

 C. Dependency

 Pursuant to N.C. Gen. Stat. § 7B-1111(a)(6), a court may terminate parental

rights on the ground that the parent is incapable of providing for the proper care and

supervision of the child and the incapability will continue for the foreseeable future.

N.C.G.S. § 7B-1111(a)(6). The incapability under this statute “may be the result of

substance abuse, mental retardation, mental illness, organic brain syndrome, or any

other cause or condition that renders the parent unable or unavailable to parent the

 - 17 -
 IN RE: Z.D.

 Opinion of the Court

juvenile and the parent lacks an appropriate alternative

child care arrangement.” Id. “In determining whether a juvenile is dependent, the

trial court must address both (1) the parent’s ability to provide care or supervision,

and (2) the availability to the parent of alternative child care arrangements.” In re

T.B., C.P., & I.P., 203 N.C. App. 497, 500, 692 S.E.2d 182, 184 (2010) (citations and

quotation marks omitted).

 Respondent argues the trial court erred in terminating her parental rights on

the ground of dependency because the trial court failed to make any specific findings

regarding Respondent’s ability to care for her son at the time of the hearing.

Respondent also argues that the evidence was insufficient to support the finding that

she had a current incapability that would continue for the foreseeable future. We

agree.

 The trial court found in findings of fact 7, 10, and 12 that Respondent was

unable to provide proper care for the child. However, this determination is more

properly a conclusion of law as it requires the application of legal principles to the

facts of the case, and as such must be supported by sufficient evidentiary findings.

See N.C. Gen. Stat. § 7B-101(9) (2017); Guox v. Satterly, 164 N.C. App. 578, 583, 596

S.E.2d 452, 455, disc. review denied, 359 N.C. 188, 606 S.E.2d 906 (2004); see also In

re B.W., 190 N.C. App. 328, 335, 665 S.E.2d 462, 467 (2008) (“If a contested ‘finding’

is more accurately characterized as a conclusion of law, we simply apply the

 - 18 -
 IN RE: Z.D.

 Opinion of the Court

appropriate standard of review and determine whether the remaining facts found by

the court support the conclusion.”) (citations omitted).

 For the same reasons discussed in sections A and B above, we hold the trial

court’s findings are insufficient to support its ultimate finding and conclusion that

Respondent was incapable of providing for the proper care of her son and that such

incapability would continue for the foreseeable future. As stated previously, the trial

court failed to include any detailed findings pertaining to Respondent’s progress or

lack of progress in addressing her mental health concerns over the fifteen months

prior to the termination hearing. Rather the findings regarding Respondent’s mental

health and parenting abilities pertain more to the historic facts of the case that

occurred at least a year prior to the hearing, and the order contains no specific

findings regarding Respondent’s condition, mental health, and alleged incapability at

the time of the hearing.

 In support of Petitioners’ assertion that, at the time of the termination hearing,

Respondent was incapable of caring for her son, they testified to specific events

occurring a year before the termination hearing. The only support occurring within

six months of the termination hearing was that Respondent appeared tired at the

December 2016 visit and arrived late to Petitioners’ home the following morning.

Petitioners did not present any evidence that Respondent was not following her

mental health treatment recommendations. The uncontradicted evidence of

 - 19 -
 IN RE: Z.D.

 Opinion of the Court

Respondent’s psychiatrist showed that Respondent was participating and following

her ACT services, was committed to her treatment, and had been symptom free for

over a year. Thus, we hold Petitioners failed to present clear, cogent, and convincing

evidence to support the trial court’s finding that Respondent was currently incapable

of caring for her son and that such incapability would continue for the foreseeable

future. Cf. Matter of A.L.L., ___ N.C. App. ___, ___, 802 S.E.2d 598, 609 (2017)

(upholding the trial court’s termination of the mother’s parental rights based on

dependency, holding that evidence of the mother’s “longstanding mental health

conditions and her repeated failures to follow recommendations for treatment

necessary to care for her children safely constituted clear, cogent, and convincing

evidence to support the trial court’s findings of dependency”).

 Because we hold that the evidence and findings were insufficient to support

the trial court’s ultimate finding and conclusion that grounds existed to terminate

parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(6), the trial court erred in

terminating Respondent’s parental rights on the ground of dependency.

 III. Conclusion

 The trial court’s findings were insufficient to support its ultimate findings and

conclusion that grounds existed to terminate Respondent’s parental rights pursuant

to N.C. Gen. Stat. § 7B-1111(a)(1), (2), or (6). Accordingly, we reverse the trial court’s

order terminating Respondent’s parental rights as to her son.

 - 20 -
 IN RE: Z.D.

 Opinion of the Court

REVERSED.

Judge STROUD concurs.

Judge BRYANT dissents with separate opinion.

 -2-
 No. COA17-876 – In re Z.D.

 BRYANT, Judge, dissenting.

 Because I believe the evidence and findings were sufficient to support the trial

court’s ultimate finding that respondent failed to make reasonable progress in

correcting the conditions which led to the child’s removal to the satisfaction of the

trial court, I would hold the findings support the conclusion that grounds existed

pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) to terminate respondent’s parental

rights. Thus, for the following reasons, I respectfully dissent.

 “If the trial court’s findings of fact ‘are supported by ample, competent

evidence, they are binding on appeal, even though there may be evidence to the

contrary.’ ” In re S.C.R., 198 N.C. App. 525, 531, 679 S.E.2d 905, 906 (2009) (quoting

In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988)). We

review whether a trial court’s findings of fact support its conclusions of law de

novo. See In re S.N., 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008) (citation

omitted). “We review the trial court’s decision to terminate parental rights for abuse

of discretion.” In re Anderson, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002)

(citation omitted). “The trial court is ‘subject to reversal for abuse of discretion only

upon a showing . . . that the challenged actions are manifestly unsupported by

reason.’ ” In re J.L.H., 224 N.C. App. 52, 57, 741 S.E.2d 333, 337 (2012) (alteration

in original) (quoting Clark v. Clark, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980)).

 Here, in support of its conclusion that grounds existed pursuant to N.C. Gen.
 IN RE Z.D.

 BRYANT, J., dissenting

Stat. § 7B-1111(a)(1), (2), and (6) to terminate respondent’s parental rights, the trial

court made the following evidentiary findings of fact:

 7. Petitioners have known Respondent since she was a
 teenager and are intimately familiar with Respondent’s
 mental health issues and treatment. Respondent has a
 bipolar diagnosis. Since the juvenile was placed with the
 caregivers in 2010, Respondent has had multiple episodes
 related to her mental illness that have left her incapable of
 properly caring for the juvenile. Petitioners have had
 intimate knowledge of these episodes.

 ....

 10. However, Respondent’s behavior during the visits in
 Pennsylvania was consistently concerning and
 demonstrated an ongoing and continuing inability to
 provide proper care. In 2015, this Court changed the
 visitation order to no longer require Petitioners to house
 Respondent during her quarterly visits. Respondent’s
 behavior in their home was disturbing and was adversely
 impacting the juvenile. Respondent has not always acted
 in the juvenile’s best interest during visits. By way of
 example, during one visit, Respondent indicated she was
 hungry. Petitioners allowed Respondent to take the
 juvenile to a restaurant. Respondent bought and ate food,
 but Respondent did not buy anything for the juvenile. By
 way of further example, the juvenile has directed
 Respondent to end a visit early so that she might rest.
 While Petitioners have felt comfortable leaving the juvenile
 with Respondent in their home for short unsupervised
 periods of time during visits, Petitioners have never felt
 Respondent was capable of supervising the juvenile for any
 extended period of time.

 11. Respondent has been working with the UNC ACT
 (“Assertive Community Treatment”) team for several
 years, since at least before Petitioners attempted to reunite
 the juvenile with Respondent in 2013. ACT provides “wrap-

 2
 IN RE Z.D.

 BRYANT, J., dissenting

 around” services for individuals with significant mental
 health concerns. Even with the provision of these intense
 services, Respondent is unable to provide proper care for
 the juvenile. Dr. VanderZwaag testified Respondent would
 be capable of parenting the juvenile with assistance, but
 Dr. VanderZwaag has never observed Respondent with the
 juvenile. Dr. VanderZwaag acknowledged Respondent was
 last hospitalized due to her mental health illness in
 December 2015, more than five years after this case began
 due to similar mental health concerns.

 12. Petitioners have observed Respondent over the course
 of many years, and Petitioners have an intimate
 familiarity with Respondent’s parenting abilities.
 Petitioners are convinced Respondent lacks the ability to
 properly care for the juvenile. Petitioners would not
 hesitate to reunite the juvenile with Respondent if they
 thought otherwise. Petitioners have allowed Respondent to
 have “extra” visitation outside of the court-ordered
 schedule. Petitioners did not file the termination petition
 lightly. The Court believes Petitioners and accepts their
 testimony as true.

(Emphasis added). The trial court then made ultimate findings of fact:

 13. Respondent has neglected the juvenile and there is a
 reasonable probability Respondent would neglect the
 juvenile if he were returned to her care.

 14. Respondent has willfully left the juvenile in
 placement outside the home for more than twelve months
 without showing to the satisfaction of this Court that
 reasonable progress under the circumstances has been
 made in correcting the conditions which led to the removal
 of the juvenile.

 15. Respondent is incapable of providing for the proper
 care and supervision of the juvenile, such that the juvenile
 is a dependent juvenile within the meaning of G.S. 7B-101,
 and there is a reasonable probability that such incapability

 3
 IN RE Z.D.

 BRYANT, J., dissenting

 will continue for the foreseeable future. Respondent lacks
 an appropriate child care arrangement.

 Respondent does not contest that she willfully left her child in placement

outside the home for more than twelve months; indeed, it has been over five years.

Instead, respondent contends—and the majority agrees—that the trial court’s

findings of fact are insufficient to support its ultimate finding that she failed to make

reasonable progress in correcting the conditions that led to the child’s removal. She

challenges the findings as being “vague” and “incomplete,” arguing that they do not

address her progress or lack of progress leading up to the termination hearing. As a

result, the majority has determined that the findings of fact are insufficient to

support its conclusion that grounds existed to terminate her parental rights pursuant

to N.C. Gen. Stat. § 7B-1111(a)(2). I respectfully disagree.

 To terminate parental rights under N.C. Gen. Stat. § 7B-1111(a)(2), “the trial

court must perform a two-part analysis.” In re O.C. & O.B., 171 N.C. App. 457, 464,

615 S.E.2d 391, 396 (2005) (citing In re Baker, 158 N.C. App. 491, 494, 581 S.E.2d

144, 146 (2003)).

 The trial court must determine by clear, cogent and
 convincing evidence that a child has been willfully left by
 the parent in foster care or placement outside the home for
 over twelve months, and, further, that as of the time of the
 hearing, as demonstrated by clear, cogent and convincing
 evidence, the parent has not made reasonable progress
 under the circumstances to correct the conditions which led
 to the removal of the child.

 4
 IN RE Z.D.

 BRYANT, J., dissenting

Id. at 464–65, 615 S.E.2d at 396.

 “Willfulness is established when the respondent had the ability to show

reasonable progress, but was unwilling to make the effort.” Id. at 465, 615 S.E.2d at

396 (quoting In re McMillon, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (2001)). “A

finding of willfulness is not precluded even if the respondent has made some efforts

to regain custody of the child[ ].” Id. (quoting In re Nolen, 117 N.C. App. 693, 699,

453 S.E.2d 220, 224 (1995)).

 According to unchallenged Finding of Fact No. 3, the child was removed from

respondent’s care due to respondent’s mental health issues and drug use and DSS’s

concern for the juvenile’s care and well-being. A review of the record and transcript

indicates the competent evidence also supports the trial court’s other findings of fact.

 In Finding of Fact No. 7, the trial court found that respondent has had multiple

episodes relating to her mental illness since her diagnosis in 2011. Respondent

argues the finding fails to include any information pertaining to what constituted an

“episode” and the nature of the “episodes,” including respondent’s condition and

behavior during one.

 However, the transcript reveals that the latest episode respondent experienced

was “a manic episode,” for which she was hospitalized and involuntarily committed.

From these facts, the trial court could reasonably infer that these episodes, including

the one she suffered fifteen months prior, were of a dangerous nature—at least one

 5
 IN RE Z.D.

 BRYANT, J., dissenting

resulted in her hospitalization and involuntarily commitment. See In re W.R.D., ___

N.C. App. ___, ___, 790 S.E.2d 344, 347 (2016) (“To support an involuntary

commitment order, the trial court is required to ‘find two distinct facts by clear,

cogent, and convincing evidence: first that the respondent is mentally ill, and second,

that he is dangerous to himself or others.’ ” (emphasis added) (citation omitted)

(quoting In re Lowery, 110 N.C. App. 67, 71, 428 S.E.2d 861, 863–64 (1993)). Thus,

we conclude the competent evidence supports the trial court’s Finding of Fact No. 7,

which finding is also sufficiently specific to support the trial court’s ultimate findings

and conclusions of law. See In re D.M.O., ___ N.C. App. ___, ___, 794 S.E.2d 858, 861

(2016) (“[A] trial court must make adequate evidentiary findings to support its

ultimate finding . . . .” (citation omitted)).

 In Finding of Fact No. 10, the trial court found that respondent’s behavior

during her visits was “consistently concerning” and “disturbing.” Respondent argues

the trial court failed to find with any particularity what behavior it found to be

“concerning” and “disturbing[,]” and whether this behavior related in any manner to

respondent’s mental health and her ability to care for the child.

 To the contrary, the trial court included a specific example of respondent’s

behavior that the trial court found to be “disturbing”—the fact that respondent took

the juvenile to a restaurant and purchased food only for herself. By arguing that the

trial court was insufficiently particular in making this finding, respondent is

 6
 IN RE Z.D.

 BRYANT, J., dissenting

essentially asking this Court to reweigh the evidence, in other words, reconsider the

evidence in making a determination of what constitutes “disturbing” or “concerning”

behavior. This Court should decline to engage in such reweighing of the evidence.

 Here, the competent evidence supports the trial court’s Finding of Fact No. 10.

At the hearing, the petitioner caregivers testified as follows regarding respondent’s

behavior:

 Q. . . . [Y]ou said earlier she was in and out of the
 hospital. Was she out of the hospital and into a hospital at
 any time when you were in Pennsylvania?

 A. Yes, she was.

 Q. When was that?

 Q. I think in 2015. But I remember she was in -- in
 the hospital in -- at UNC, but they felt that was too long a
 timespan in the psychiatric care. And then she had to go to
 a long -- longer term hospitalization.

 Q. How do you know that? She told you that?

 A. Yes, she told us.

 Q. Did that interfere with any of her visits?

 A. I think we had two. We -- we -- she had to skip a
 visit at the time.

 Q. When was the last visit you had with her? Or
 when was the last time -- she was in Pennsylvania to visit
 [the child]?

 A. Last Christmas 2016.

 7
 IN RE Z.D.

 BRYANT, J., dissenting

 Q. How did that visit go?

 A. That visit was a little choppy. She -- she -- on the
day she was to be there at 5:00 -- at -- at noon, it was 2:30
we were calling her to say where are you, where are you?
And the day before that she seemed too tired that [the
child] had to say well, why don’t you just go home and go to
sleep?

 ....

 Q. During that visit did you -- your opinion change
about whether you’d feel comfortable leaving [the child]
with her as a full-time caregiver?

 A. Yeah, it’s -- it’s one of those times we felt this --
this won’t -- this won’t work. It wouldn’t work to -- to -- to
leave her because the difficult thing is -- is -- it’s not
knowing which [respondent] were -- we have. We know
[respondent] by nature is a very caring about her son. But
in terms of her engagement and doing the things that are
necessary in making the right decisions, it’s -- we feel it’s
off in deciding -- like the prior visit she would decide that
taking portraits for the son is more important than getting
him say pull-ups to keep him from soiling his bed. . . .

 ....

 A. . . . [W]e suggested to her -- well, see [the child]
was soiling his bed and we -- we -- we get him pull-ups and
we -- and we said well, why don’t you get him some pull-
ups. Just invest a little bit in getting some pull-ups. But
she said I only have money to have portraits done, so I can’t
get -- you know, the pull-ups is not something I can get.
 And so -- and so it happened that the day that she
went to do the portrait, she couldn’t do that at the time
because they didn’t have appointment and she took him out
to -- she went with him, because she felt she was hungry,
she went and -- and sat and ate. And -- and so [the child]
said well, I’m hungry now when he -- when they returned.

 8
 IN RE Z.D.

 BRYANT, J., dissenting

 And she said well, that you -- did you eat with your mom
 and he said well, he had some bite[s] from her meal, but
 she ate and did not provide food for him at the time. So it’s
 just -- that’s what I mean by not knowing which
 [respondent] is going to show up.

 ....

 Q. In your opinion, can she be a full-time caregiver
 to [the child]?

 A. No, not at this time I don’t think so.

 Q. Do you feel pretty confident about that?

 A. Yes.

The other petitioner caregiver testified as follows regarding respondent’s progress:

 Q. Do you have concerns about [respondent’s]
 behavior that you’ve witnessed during [her] visits [with the
 child]?

 A. I’ve witnessed [respondent] not being the same
 [respondent] each time. She’s always a little different.
 Sometimes she’s very attentive. Like one visit I thought
 let’s just send him home right away, because she was so
 awesome with him. She helped him with his homework and
 she was -- she was loving and she did all the right things
 and she disciplined him.
 And then the next one, she was totally out to lunch.
 It was like a totally different person compared to the
 person that was there before. And it -- and it’s been
 consistent like that. Some days -- some visits she’d be --
 she’d be absolutely wonderful and some visits she just
 wasn’t there.

 Q. Are there any specific instances of behavior that
 you found troubling?

 9
 IN RE Z.D.

 BRYANT, J., dissenting

 A. Well, the last one, because it’s in my mind so
 clearly is when she drove and she got in a little later than
 she thought. So she went to -- and slept and then she woke
 up and came over to the house and [the child] felt that she
 was tired. And he suggested that she go home. And -- and
 he told me, he said, you know, I told my mom that she’s
 tired and she has to go home. And I said, oh, okay. You
 know, what am I going to say? [The child] loves his mother
 dearly. He knows his mother. He doesn’t believe that his
 mother can take care of him, but he cares very much about
 her wellbeing.
 So the next day, we were waiting for her to come and
 at 2:30 I called and I said well, aren’t you going to come and
 have time with [the child]? And she was just getting up. So
 by the time she did come, it was a little bit later. But [the
 child] happened to be sick that day. So she was able to stay
 longer with him. And she even -- I had to go out and she
 stayed with him for two hours. I had set up everything so
 that it was pretty simple for her to -- to -- to do.
 I mean, I had dinner ready for her to make and I had
 -- I had his -- his stuff altogether and so it was pretty
 straightforward.

 ....

 Q. Would you support the mother having custody of
 [the child] if you thought she could do it?

 A. If I thought she could do it, I would definitely
 support that, yes.

 Q. I gather you do not think she can do it?

 A. I do not think she can do it at this time.

The testimonial evidence above shows that even as late as December 2016,

respondent’s last visit with the juvenile, she had not progressed to the point where

she could take custody and care of the child.

 10
 IN RE Z.D.

 BRYANT, J., dissenting

 In Finding of Fact No. 11, the court found that “[e]ven with the provision of

[the ACT] intense services, Respondent is unable to provide proper care for the

juvenile.” Respondent argues the trial court made no finding as to why or how,

despite these services, respondent was not able to provide proper care for the child or

what specifically she was doing or not doing to address her mental health issues.

Respondent’s argument to the contrary, the testimony excerpted above is competent

evidence that illustrates that respondent continued to exhibit signs of mental

instability and was not able to provide proper care for the child—petitioners, whom

the trial court specifically found it “believed” and that whose trial testimony it

accepted “as true,” testified that respondent could not properly care for the child at

the time of the hearing. There was simply no evidence before the trial court that

respondent had made reasonable progress—for over five years—in correcting the

conditions that led to removal of the child.

 The competent evidence supports the trial court’s Findings of Fact Nos. 10 and

11, which in turn support the trial court’s ultimate finding and conclusion that

respondent has willfully left the child in placement outside the home for more than

twelve months without showing reasonable progress has been made under the

circumstances. Because the evidence and findings were sufficient to support the

court’s ultimate finding that respondent failed to make reasonable progress in

correcting the conditions which led to the child’s removal to the satisfaction of the

 11
 IN RE Z.D.

 BRYANT, J., dissenting

court, I would hold the findings support the conclusion that grounds existed pursuant

to N.C. Gen. Stat. § 7B-1111(a)(2) to terminate respondent’s parental rights.

Therefore, there was no abuse of discretion by the trial court in ordering the

termination of respondent’s parental rights.

 Accordingly, I would affirm the trial court’s order terminating respondent’s

parental rights to the child. I respectfully dissent from the majority opinion.

 12