IN THE MATTER OF: CHAREESE McMILLON, (A) MINOR CHILD

No. COA00-569

(Filed 15 May 2001)

1. **Termination of Parental Rights— willfully leaving child in
   foster care over twelve months—no contributions to
   child's financial support—failure to visit child**

   The trial court did not abuse its discretion by terminating
   respondent mother's parental rights based on the best interests of
   the child, because clear, cogent, and convincing evidence sup-
   ports the trial court's findings and conclusions that: (1) the
   mother willfully left the child in foster care for over twelve
   months without making reasonable progress toward correcting
   the conditions that led to his removal; (2) she contributed noth-
   ing toward the child's financial support during the twenty-eight
   months the child was in foster care despite having the ability to
   pay some amount greater than zero; and (3) she failed to visit her
   child for the eighteen months preceding the termination hearing.

IN RE McMILLON

[143 N.C. App. 402 (2001)]

**2. Evidence— hearsay—no prejudice**

   Although respondent mother contends the trial court erred in a parental termination proceeding by admitting the hearsay testimony of two social workers who were treating the minor child, there was no prejudice because: (1) the trial court's findings regarding the mother do not depend upon the challenged testimony; (2) there is no indication the trial court relied on the controverted testimony; and (3) there is sufficient evidence to support the trial court's findings exclusive of the social workers' testimony.

**3. Termination of Parental Rights— abuse—willfully left child in foster care over twelve months—no contributions to child's financial support**

   The trial court did not abuse its discretion by terminating respondent father's parental rights based on the best interests of the child, because clear, cogent, and convincing evidence supports the trial court's findings and conclusions that: (1) the father's own testimony of past physical abuse coupled with his refusal to address his emotional problems in counseling indicates a likelihood the child's abuse would reoccur; (2) the father willfully left his child in foster care for over twelve months without making reasonable progress under the circumstances toward correcting the conditions that had led to the child's removal; and (3) the father has failed to pay a reasonable portion of the cost of the child's care during the six months prior to the filing of the petition although he was physically and financially able to do so.

   Appeal by respondents from an order terminating their parental rights entered 20 August 1999 by Judge William G. Hamby, Jr. in Cabarrus County District Court. Heard in the Court of Appeals 21 February 2001.

   *Matthew F. Ginn, for respondent-appellant Charles McMillon.*

   *Scott C. Robertson, for respondent-appellant Janet Earle.*

   *Kathleen Arundell Widelski, for petitioner-appellee Cabarrus County Department of Social Services.*

BIGGS, Judge.

   On 20 August 1999 the trial court entered an order terminating the parental rights of Charles McMillon (McMillon) and Janet Earle

IN RE McMILLON

[143 N.C. App. 402 (2001)]

(Earle), respondents. Respondent McMillon gave notice of appeal on 30 August 1999; respondent Earle gave notice of appeal 9 September 1999. In separate briefs, both respondents contest the trial court's conclusions that grounds for termination exist, and that termination would be in the best interests of Chareese McMillon (Chareese). For the reasons that follow, we affirm the trial court's order terminating parental rights as to both respondents.

Chareese Jamar Earl McMillon, born 28 May 1987, is the son of Charles McMillon and Janet Earle. In 1996, when Chareese was nine years old, the Cabarrus County Department of Social Services (DSS) investigated reports that Chareese was being mistreated. On 12 March 1996, DSS filed a petition alleging that respondents McMillon and Earle had abused and neglected Chareese. On the same date, DSS obtained a non-secure custody order and placed Chareese in foster care. On 9 July 1996, Adam C. Grant Jr. presided over an adjudication and disposition hearing on the allegations in the petition. The trial judge received evidence that included a Predisposition Summary prepared by DSS, and a report from the court-appointed guardian ad litem (GAL). These reports indicated that Chareese had exhibited "deep emotional problems and violent episodes," was terrified of his father, and had been aggressive toward other children. McMillon did not permit his wife or son to socialize with others, and had issued violent threats to neighborhood children who played near his yard. Earle could not restrain McMillon's violent behavior either toward her or Chareese. At the hearing, the court also heard testimony on specific instances of violent behavior by McMillon toward Chareese.

The court found by clear, cogent, and convincing evidence the following: that McMillon had "struck Chareese McMillon in the face with a belt buckle leaving a swollen, red abrasion to his cheek area that was 4 centimeters by 4 centimeters, the dimensions of Mr. McMillon's belt buckle;" that on another occasion "Charles McMillon and Janet Earle were engaged in domestic violence in the presence of Chareese McMillon [and] Chareese McMillon placed himself in harm's way to protect his mother; that the child hid in the closet and watched his father batter his mother; that the child sustained a bump to his head during the altercation; and that he has expressed fear of his father." On the basis of these and other findings, the court adjudicated Chareese to be neglected and abused.

A dispositional hearing was held the same day. The court's Dispositional Order continued Chareese in the custody of the Cabarrus County DSS. The court also ordered Earle and McMillon to

comply with the parental tasks enumerated in the DSS Predispositional Summary. Included in the DSS plan were provisions that required both parents to "have psychological evaluations and attend counseling indicated;" to "obtain education regarding child development, [parenting skills,] and [the] emotional needs of Chareese;" and to "be able to demonstrate what they have learned." Additionally, McMillon was required to obtain counseling "regarding anger management and appropriate discipline," while Earle was directed to address her problems "regarding domestic violence and dependency issues."

At the dispositional hearing, the trial court ordered that a review be conducted in 60 days to assess Chareese's needs, as well as McMillon's and Earle's progress toward reunification with Chareese. Accordingly, a review hearing was held in December, 1996, before Judge Adam C. Grant, Jr. The trial judge considered several reports, including updates from social workers and therapists, and a report from the guardian ad litem. This evidence indicated that Chareese had problems with "peer relationships and low self esteem," had been placed on suicide watch several times, and had a "tremendous fear of his father." He had engaged in "inappropriate sexual behavior with another male child," and his counselors were concerned about the possibility of prior sexual abuse. Chareese also had been diagnosed with Oppositional Defiant Disorder and "severe ADHD," and "was functioning well below his age and grade level educationally, socially, developmentally, and emotionally." In therapy, he had expressed concern about incidents in which his father had inflicted "severe physical discipline," while his mother "did not attempt to protect [him.]"

The DSS and GAL reports that were received into evidence revealed that neither parent had made any financial contribution to Chareese's upkeep after he was placed in foster care. McMillon had visited Chareese only once during the five months he was in foster care. Chareese was so distraught after their meeting, that his therapist suspended further visits with McMillon. Earle also had not visited Chareese until August, 1996, five months after Chareese's initial placement. Both parents had obtained the required psychiatric evaluation. This evaluation "was not favorable for Ms. Earle." Earle denied that there were any problems in her home, or that Chareese had been neglected or abused. She had told the social worker "on several occasions" that she would not complete the items in the Service Plan and that, if she had to choose between Chareese and McMillon, she would

choose McMillon. McMillon likewise had expressed an intention not to complete the items in the plan because he believed "he does not need any help with the issues identified in the Service Agreement." He denied that Chareese had been neglected or abused, and "further [denied] that he [had] any problems that need to be addressed and/or changed." The GAL expressed "serious concern for the safety of Chareese were he to be reunited with his parents due to Janet Earle's past inability to protect her son from harm, their past denial that abuse occurred in their home, and the most recent disclosure of graphic pornography viewed by their son in their home."

After considering the evidence, the court found that the respondents were not making reasonable progress toward reunification with Chareese. A new Service Agreement was implemented, which included the same components as the earlier agreement, and additionally directed both parents to "fully participate" in counseling, and to "enroll, attend, and fully participate in the next available parenting class offered by Cabarrus Behavioral Healthcare." Earle was to have supervised bi-weekly visits with Chareese. The court ordered Chareese to remain in DSS custody, pending another review in 60 days. This review was held in February, 1997, before Judge Clarence E. Horton, Jr. The court found that respondents had made "some progress" toward reunification, in that they had attended several counseling sessions. The court ordered that the respondents continue to work toward reunification, and that the matter be reviewed in 90 days.

The next review hearing was held in August, 1997, before Judge Adam C. Grant, Jr. The court heard testimony from several of those who had been working with respondents, including Dr. Barton, a psychiatrist, as well as a DSS social worker. The trial court also received written reports into evidence, including a psychological progress summary and a letter from the Alexander Children's Center where Chareese had been placed. This evidence indicated that both respondents "continue[d] to deny their culpability in the abuse issues" that they had been directed to address in therapy with Dr. Barton. Although respondents had attended some counseling sessions, Dr. Barton reported that "little or no progress [had] been made in the last six months that he [had] worked with Ms. Earle," and that McMillon had not "expressed concerns about anger management or sexual issues, nor [did he have] a perspective or self-awareness of his risk to others." He noted that Earle had "an unclear or vacillating posture with respect to who's needs should come first, herself or

Chareese," and that McMillon's "closed posture does not suggest a constructive motivation [for change]" and "further suggests risk to Chareese should he return home." Moreover, the evidence demonstrated that neither respondent had contributed anything to Chareese's financial support.

The court also received progress reports concerning Chareese. The GAL report stated that Chareese "continues to deal with behavior and psychological problems from his troubled home life." Chareese received weekly counseling sessions, and medication for anxiety, depression, and attention deficit disorder. Dr. Barton reported that "it seems clear that Chareese is a disturbed young man, and that his family is not able . . . to help him". . . . "[T]he family's limitations and Chareese's apparent needs suggest that he should be placed somewhere where the community can be reassured that he will receive more active and constructive support."

Upon consideration of the evidence, the court found that Cabarrus County DSS had made reasonable efforts toward reunification, and concluded that the respondents had not made reasonable progress toward addressing their problems. The court further concluded that additional efforts by DSS toward reunification would be futile or inconsistent with Chareese's needs, and that the permanent plan for Chareese should be changed from reunification to termination of parental rights.

In April, 1998, the Cabarrus County DSS filed a petition to terminate the respondents' parental rights. A hearing was held on 1 July 1999, more than three years after Chareese's initial placement in foster care. The trial court found the following statutory grounds for termination of parental rights: (1) that respondents willfully left Chareese in foster care for over twelve months without making reasonable progress toward correcting the conditions that had led to Chareese's placement in foster care, and that poverty was not the sole or primary reason for this failure; (2) that respondents willfully failed to contribute any funds toward Chareese's care, although physically and financially able to do so; and (3) that McMillon had abused or neglected Chareese. In its findings of fact, the trial judge incorporated by reference all of the Court Reports and other documents in the file, and all prior Orders in the case, and also found that Chareese needed structured supervision, which he had not received from his parents. The court concluded that termination of the respondents' parental rights was in the child's best interests, and ordered that the

IN RE McMILLON

[143 N.C. App. 402 (2001)]

parental rights of both respondents be terminated. Respondents appeal from this order.

Initially, we note that the North Carolina Juvenile Code, including the provisions governing proceedings to terminate parental rights, was revised effective 1 July 1999. This revision replaced former Articles 41 through 59 of Chapter 7A with new Chapter 7B. However, because the petition in the instant case was filed prior to the effective date of Chapter 7B, this case is governed by the appropriate provisions of Chapter 7A.

The hearing on a petition for termination of parental rights is conducted in two phases: adjudication and disposition. At the adjudication stage, the petitioner has the burden of proof to demonstrate by clear, cogent, and convincing evidence that one or more of the statutory grounds for termination exist. *In re Young*, 346 N.C. 244, 485 S.E.2d 612 (1997); *In re Bluebird*, 105 N.C. App. 42, 411 S.E.2d 820 (1992). The criteria for termination are set out in N.C.G.S. § 7A-289.32 (1999). The standard for appellate review of the trial court's conclusion that grounds exist for termination of parental rights is whether the trial judge's findings of fact are supported by clear, cogent, and convincing evidence, and whether these findings support its conclusions of law. *In re Huff*, 140 N.C. App. 288, 536 S.E.2d 838 (2000), *disc. review denied*, 353 N.C. 374, 547 S.E.2d 9 (2001); *In re Allred*, 122 N.C. App. 561, 471 S.E.2d 84 (1996).

If the petitioner meets its burden of proving that there are grounds to terminate parental rights, the trial court then will consider whether termination is in the best interests of the child. The trial court does not automatically terminate parental rights in every case that presents statutory grounds to do so. *In re Leftwich*, 135 N.C. App. 67, 518 S.E.2d 799 (1999); *In re Allred*, 122 N.C. App. 561, 471 S.E.2d 84 (1996). However, the trial court has discretion, if it finds that at least one of the statutory grounds exists, to terminate parental rights upon a finding that it would be in the child's best interests. *In re Blackburn*, 142 N.C. App. 607, 543 S.E.2d 906 (2001); *In re McLemore*, 139 N.C. App. 426, 533 S.E.2d 508 (2000). A court's finding of one (1) of the statutory grounds for termination, if supported by competent evidence, will support an order terminating parental rights. *In re Nolen*, 117 N.C. App. 693, 453 S.E.2d 220 (1995); *In re Taylor*, 97 N.C. App. 57, 387 S.E.2d 230 (1990). The trial court's decision to terminate parental rights, if based upon a finding of one or more of the statutory grounds supported by evidence in the record, is reviewed on an abuse of discretion standard. *In re Brim*, 139 N.C.

**IN RE McMILLON**

[143 N.C. App. 402 (2001)]

App. 733, 535 S.E.2d 367 (2000); *In re Allred*, 122 N.C. App. 561, 471 S.E.2d 84 (1996).

The issues presented to this Court are: (1) whether the trial court's findings of fact were supported by the evidence, (2) whether its conclusion that grounds existed to terminate the respondents' parental rights was supported by its findings of fact, and (3) if so, whether it was an abuse of discretion for the trial judge to terminate the respondents' parental rights.

[1] We first evaluate the trial court's termination of respondent Earle's parental rights. The trial court found two grounds for termination of Earle's parental rights: that she had willfully left Chareese in foster care for over twelve months without making reasonable progress toward correcting the conditions that led to his removal, and that she had contributed nothing toward Chareese's financial support, despite having the ability to "pay some amount greater than zero." A finding of either one of these statutory grounds for termination, if supported by the record, will support the court's order of termination. *In re Bluebird*, 105 N.C. App. 42, 411 S.E.2d 820 (1992); *In re Williamson*, 91 N.C. App. 668, 373 S.E.2d 317 (1988). This Court finds that the evidence supports both findings.

It is undisputed that Chareese was in foster care for over twelve months; as of the time of the hearing, he had been in DSS custody for twenty-eight (28) months. This Court must determine whether the record supports the trial court's finding that Earle had wilfully failed to make progress during the time that Chareese was in foster care. Following the court's initial adjudication of abuse and neglect of Chareese, the child was placed in foster care in the custody of DSS. Pursuant to court order, Earle was ordered to comply with the Service Plan for reunification with Chareese. The Plan required Earle to focus on psychological and emotional growth, in order to learn how to care properly for Chareese. She was required to obtain a psychological examination, and to participate in any counseling recommended as a result of the examination. She was also to complete a parent education class, participate in biweekly visits with Chareese, and address the problems she had in responding to McMillon's displays of anger. In over two years, Earle completed only one item on this list—the psychological examination. She did not take a parenting skills class, and visited only a few times with Chareese; indeed, at the time of the hearing she had not visited him for eighteen (18) months. Moreover, she consistently denied either that Chareese had been abused or neglected, or that she had any need for counseling. As a

IN RE McMILLON

[143 N.C. App. 402 (2001)]

result, the therapist assigned to work with the family observed that Earle's behavior indicated "an unfavorable prognosis," noting that she "has not . . . demonstrated an empathetic concern for Chareese's circumstances, nor demonstrated to day care workers, DSS professionals, nor me that she has sophisticated parenting skills to deal with Chareese's behavioral and emotional difficulties." We find that the evidence demonstrated that Earle had left Chareese in foster care for over twelve months without making reasonable progress toward reconciliation.

In order to uphold the trial court's order, we also must find that respondent's failure was willful. *In re Bishop*, 92 N.C. App. 662, 375 S.E.2d 676 (1989). Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort. *See, e.g., In re Nolen*, 117 N.C. App. 693, 453 S.E.2d 220 (1995) (parent's refusal to obtain treatment for alcoholism constituted willful failure to correct conditions that had led to removal of child from home); *In re Bluebird*, 105 N.C. App. 42, 411 S.E.2d 820 (1992) (general lack of involvement with child over two year period supports finding that respondent willfully left child in foster care). It is significant that the tasks assigned to Earle were within her ability to achieve, and did not require financial or social resources beyond her means. *See In re Oghenekevebe*, 123 N.C. App. 434, 473 S.E.2d 393 (1996) (respondent willfully left child in foster care where she did not take advantage of DSS assistance with services such as counseling and parenting classes to improve her situation); *In re Wilkerson*, 57 N.C. App. 63, 291 S.E.2d 182 (1982) (respondents willfully abandoned child where they had the ability to overcome problems, but did not do so). In the instant case, the record demonstrates that respondent was unwilling to comply with the Service Plan in order to be reunified with Chareese. She would not acknowledge that she needed to learn more about her son's needs; that she could not provide a safe and appropriate home for Chareese as long as both she and he were subject to McMillon's physical abuse; or that the counseling required by the DSS plan would help her to effect changes in her emotional relationships. Moreover, she failed to visit Chareese for the eighteen months preceding the termination hearing. We find that this record amply supports the trial judge's finding that she had willfully left Chareese in foster care for over twelve months without making adequate progress toward reunification.

The record also supports the trial court's conclusion that Earle had willfully failed to contribute financially to Chareese's upkeep.

Earle was regularly employed, yet she did not contribute *any* funds in child support during the twenty-eight months that Chareese was in foster care. This Court has held that under such circumstances, the trial court need not make detailed findings as to the amount that would be "reasonable" to expect from respondent. *See In re Huff,* 140 N.C. App. 288, 536 S.E.2d 838 (court has "no difficulty" in concluding that zero is not a reasonable sum to pay). We likewise find that the record clearly supports the conclusion that respondent willfully failed to make any financial contribution to Chareese, despite having the resources to do so.

[2] Respondent Earle has argued that the trial court erred in admitting the hearsay testimony of two social workers who were treating Chareese. However, the court's findings concerning respondent Earle do not depend upon the challenged testimony. In a bench trial, the court is presumed to disregard incompetent evidence. *In re Oghenekevebe,* 123 N.C. App. 434, 473 S.E.2d 393 (1996). Where there is competent evidence to support the court's findings, the admission of incompetent evidence is not prejudicial. *In re Huff,* 140 N.C. App. 288, 536 S.E.2d 838. In the instant case, there is no indication that the trial court relied on the controverted testimony, and there is sufficient evidence to support the trial court's findings, exclusive of the social workers' testimony. Thus, assuming *arguendo* that the testimony was inadmissible, we find no prejudice.

We find that the trial court's conclusion that grounds existed for termination of Earle's parental rights was supported by the record. Additionally, we hold that the trial court did not abuse its discretion in concluding that it was in Chareese's best interest that respondent Earle's parental rights be terminated. Voluminous evidence in the record documents Chareese's special needs, and Earle's unwillingness to meet them. Accordingly, we affirm the trial court's order terminating Earle's parental rights.

[3] We next consider respondent McMillon's appeal. We will first address the trial court's finding that McMillon had abused Chareese. The court took note of the prior adjudication of abuse, and of the evidence that had supported the ruling, including the fact that McMillon "admitted to smacking the child and whipping him, [and has] stated that he may knock the child down and might leave marks on him." He found further that "McMillon [had] fathered 16 additional children by various mothers, according to his own testimony, and he has spanked all of them and has left bruises." The record further indicates a likelihood that the abuse would reoccur if Chareese were returned to his

father. The court noted that "McMillon has stated that he can not complete these items [in the DSS plan] as he does not need any help with the issues identified in the Service Agreement." This finding is consistent with Dr. Barton's observation that McMillon "denies any physical or sexual abuse of anyone," which denial had prevented him from making "any meaningful clinical progress" during counseling. Dr. Barton noted also that Chareese's "clinical signs and symptoms are . . . consistent with the patterns [of] a child who has been abused." We find that the evidence of past physical abuse, coupled with McMillon's refusal to address his emotional problems in counseling, fully supports the court's finding that McMillon had abused Chareese.

The trial court found also that McMillon had willfully left Chareese in foster care for over twelve months without making reasonable progress under the circumstances toward correcting the conditions that had led to his removal. The DSS Service Plan required McMillon to learn more about the physical and emotional needs of children and specifically Chareese, and to address the psychological problems underlying his prior abuse of Chareese. Accordingly, he was ordered to obtain a psychological examination, complete a parenting class, attend counseling on anger management and appropriate discipline, and to be able to demonstrate what he had learned. In over two years, he completed only one of these—the psychological examination. Like Earle, McMillon contended that his "innocence" of any neglect or abuse meant that he had no need to change, and that therapy had nothing to offer him. McMillon blamed DSS for "all of [Chareese's] problems." Thus, although he was physically present for a series of counseling sessions, he did not demonstrate "any meaningful clinical progress toward acknowledging or dealing with the abuse and neglect of his son," according to Dr. Barton. Moreover, the GAL did not observe "any significant progress . . . that would indicate a safe environment for Chareese were he to be reunited with his parents." This Court finds that the record supports the trial judge's finding that McMillon had left Chareese in foster care for more than twelve months without making reasonable progress toward reunification.

We also find support in the record for the court's finding that this was a willful failure, not caused primarily by poverty. The components of the DSS plan did not require material resources, but rather called upon McMillon to make the personal effort to change abusive and assaultive behaviors.

The court also found that McMillon had failed to pay a reasonable portion of the cost of Chareese's care during the six months prior to the filing of the petition, although physically and financially able to do so. In fact, McMillon had paid nothing at all during the twenty-eight months that Chareese was in foster care prior to the hearing. The evidence was that McMillon was buying a house, owned a car, and received a disability check, and was able to support at least one other child during the six months prior to the hearing. He also indicated to the court that he had other sources of income, but refused to specify for the court what these were, saying instead that he would "take the Fifth on that." Under these circumstances, we find that the record supports the trial judge's finding that McMillon had "the ability to pay some amount greater than zero towards the care of the child." *See In re Huff*, 140 N.C. App. 288, 536 S.E.2d 838 (trial judge not required to make detailed analysis of respondent's means where respondent had failed to pay any money at all toward child's support).

For the reasons stated above, we find that the record supports the trial court's conclusion that grounds existed to terminate McMillon's parental rights. We hold also that the trial court did not abuse its discretion in terminating McMillon's parental rights based upon a conclusion that termination was in Chareese's best interests. The record shows that Chareese was one of seventeen (17) children fathered by McMillon. None of his children had lived with him throughout childhood. McMillon admitted "disciplining" Chareese by "smacking" and "whipping" him. This evidence is relevant to the issue of whether there was a likelihood of future neglect or abuse were Chareese to be returned to his father. *In re Huff*, 140 N.C. App. 288, 536 S.E.2d 838 (chronic pattern of neglect of other children relevant to issue of future neglect of child who is subject of petition). The record, including McMillon's willful failure either to contribute to Chareese's support, or to cooperate with the DSS plan for reunification, amply supports the trial judge's decision to terminate McMillon's parental rights.

For the reasons stated above, we affirm the trial court's order of termination of parental rights as to both respondents.

Affirmed.

Judges WALKER and SMITH concur.