ARROWOOD, Judge.
Respondent-father, the biological father of the juveniles D.A.P. ("Dianne"),[1] C.H.P. ("Cindy"), and M.N.P. ("Mallory"), appeals from the trial court's order terminating his parental rights. For the following reasons, we affirm.
I. Background
On 14 December 2016, Wake County Human Services ("WCHS") obtained non-secure custody of six-year-old Dianne, five-year-old Cindy, three-year-old Mallory, and their six-month-old half-sister and filed a petition alleging they were neglected juveniles. At the time the petition was filed, respondent-father was incarcerated as a result of a domestic disturbance at his mother's home.
The petition alleged the following: On 17 June 2016, WCHS received a report that the children's mother tested positive for cocaine at the time of the youngest daughter's birth.[2] Although in-home services were provided to the mother, she did not complete the recommended substance abuse treatment and again tested positive for cocaine on 19 August 2016. WCHS subsequently received a new report that the mother did not have any food in the home, the children were always hungry, and the mother was selling her food stamps. After a social worker visited the home and observed little to no food, the mother agreed that respondent-father could live in the home and be a safety resource for the youngest daughter. On 12 September 2016, a social worker visited the home and observed the mother, who was dressed inappropriately, lying on a mattress downstairs with an adult non-relative male while Dianne, Cindy, and Mallory were upstairs with respondent-father; the youngest daughter was not home at the time.
Following a hearing on 23 March 2017, the trial court entered an adjudication and initial disposition order on 8 May 2017 concluding Dianne, Cindy, and Mallory were neglected juveniles, and continuing custody with WCHS. At the time of the hearing, respondent-father was no longer incarcerated. The court ordered respondent-father to enter into and comply with a case plan that included the following: obtain and maintain income and housing sufficient to meet his and the children's needs; submit to a mental health assessment and follow all recommendations; complete a parenting program and demonstrate the skills learned; maintain regular contact with a social worker at WCHS; and confirm his attendance at least 24 hours before each supervised visit, which would occur at a minimum of one hour per week.
Following a hearing on 15 June 2017, the trial court entered a permanency planning order on 9 August 2017 continuing custody with WCHS and establishing a primary permanent plan of reunification, with a secondary plan of adoption. The court found, inter alia , that respondent-father: (1) reported he was employed and residing with his girlfriend, although he did not offer the home as a possible placement for the children; (2) had not participated in a mental health assessment or parenting education; (3) had been diagnosed with "alcohol use disorder, severe, in early remission and cannabis use disorder, severe, in sustained remission[;]" and (4) had been appropriate during his visits with the children, which occurred every other week for one hour. The court again allowed one hour of supervised visitation every other week, and ordered respondent-father to obtain and maintain housing and income sufficient to meet his and the children's needs; complete a mental health assessment and follow all recommendations; complete a parenting program and demonstrate learned skills; and maintain regular contact with a social worker at WCHS. The court also ordered respondent-father to refrain from using impairing substances and to complete drug treatment.
After a subsequent permanency planning hearing on 6 December 2017, the court entered an order changing the primary permanent plan to adoption, with a secondary plan of reunification. The trial court found:
[Respondent-father] has not maintained [and] obtained gainful employment or housing, participated in mental health services, complied with [his] substance abuse assessment, maintained sobriety, or completed parenting education. He has not made substantial progress towards having the children returned to his care and continues to act in a manner inconsistent with his Constitutionally protected status as a parent.
The court again ordered respondent-father to comply with his case plan.
On 29 January 2018, WCHS filed a motion to terminate respondent-father's parental rights on the grounds of neglect and willfully leaving the children in foster care for more than twelve months without showing reasonable progress to correct the conditions that led to their removal. N.C. Gen. Stat. § 7B-1111(a)(1)-(2) (2017). Following hearings held on 20 and 30 April 2018, the trial court entered an order on 23 May 2018 adjudicating the existence of both grounds alleged in WCHS's motion. The trial court further determined that terminating respondent-father's parental rights was in the children's best interests. Accordingly, the trial court terminated respondent-father's parental rights to Dianne, Cindy, and Mallory.
Respondent-father appeals.
II. Discussion
Respondent-father raises three arguments on appeal: (1) the trial court erred by concluding that grounds existed to terminate his parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) ; (2) the trial court erred by concluding that grounds existed to terminate his parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) ; and (3) the trial court abused its discretion by determining that termination of his parental rights was in the best interests of the minor children.
"This Court reviews a trial court's conclusion that grounds exist to terminate parental rights to determine whether clear, cogent, and convincing evidence exists to support the court's findings of fact, and whether the findings of fact support the court's conclusions of law." In re C.J.H., 240 N.C. App. 489, 497, 772 S.E.2d 82, 88 (2015) (citing In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), appeal dismissed and disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001) ). We review the trial court's legal conclusions de novo . In re A.B. , 239 N.C. App. 157, 160, 768 S.E.2d 573, 575 (2015), disc. review denied , 369 N.C. 182, 793 S.E.2d 695 (2016) (citation omitted). "A finding of any one of the enumerated grounds for termination of parental rights under [N.C. Gen. Stat. §] 7B-1111 is sufficient to support a termination." In re Humphrey , 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003) (citation omitted).
A. N.C. Gen. Stat. § 7B-1111(a)(2)
Respondent-father argues the trial court erred in finding his parental rights should be terminated pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) because the petition does not allege his actions led to the removal of the juveniles.
A court may terminate the parental rights under N.C. Gen. Stat. § 7B-1111(a)(2) upon a finding:
[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. No parental rights, however, shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.
N.C. Gen. Stat. § 7B-1111(a)(2).
[T]he determinative factors [when adjudicating a child abused, neglected, or dependent] are the circumstances and conditions surrounding the child, not the fault or culpability of the parent. This Court has admonished that the adjudication of a child's dependency should not be morphed on appeal into a question of culpability regarding the conduct of an individual parent. In other words, the "conditions" which led to the Child being placed in [WCHS] custody are not necessarily tied to the "fault" of either biological parent. Instead, those "conditions" were based entirely on "circumstances and conditions surrounding" the Child at the time [of adjudication].
In re A.W. , 237 N.C. App. 209, 216-17, 765 S.E.2d 111, 115 (2014) (citations and internal quotation marks omitted). Thus, "[a] finding of willfulness does not require a showing of fault by the parent." Matter of Oghenekevebe , 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996) (citation omitted). Rather, "[w]illfulness is established when the respondent[-father] had the ability to show reasonable progress, but was unwilling to make the effort." In re McMillon, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (citations omitted), disc. review denied, 354 N.C. 218, 554 S.E.2d 341 (2001).
Thus, although respondent-father correctly argues the children were removed due, in part, to their mother's behavior, the court must consider the circumstances and conditions surrounding the children at the time of adjudication when determining whether the children were neglected. Here, at the time of adjudication and the initial disposition, the trial court found that respondent-father needed to enter into and comply with a services agreement that included: participating in visitation in compliance with a visitation agreement, obtaining and maintaining suitable housing, submitting to, and following the recommendations of, a mental health assessment, completing parenting classes and demonstrating learned skills, and maintaining regular contact with WCHS. Subsequently, respondent-father was diagnosed with "alcohol use disorder, severe, in early remission and cannabis use disorder, severe, in sustained remission." After these diagnoses, the court entered another order requiring respondent-father to "refrain from the use of impairing substances and complete drug treatment."
The record supports the trial court's conclusion that respondent-father did little to demonstrate reasonable progress in addressing these issues to provide a suitable home for the children. Respondent-father did not begin anger management treatment, which had been available since 2016, until immediately prior to the termination of parental rights hearing, in April 2018. Further, he only attended two of the twenty-four classes necessary to complete the program. Similarly, he did not begin substance abuse classes and mental health treatment until March 2018. He admitted at the termination hearing that his attendance at substance abuse class had been inconsistent and that he had missed recent drug screens because he knew he would test positive. He continued drinking alcohol, and testified that he was charged with possession of an open container of alcohol in the passenger area of a motor vehicle in March 2018. He also testified that he had been previously charged with driving while impaired and driving with a revoked license. Further, the court found that he drank before visitation with the children on 20 April 2018.
Respondent-father also did little to demonstrate reasonable progress with regard to employment and stable housing. The record shows that, although respondent-father reported that he had recently started a part time job on 16 April 2018, at the Dollar Tree retail store, he had not yet been paid and had no documentation of income. As to housing, respondent-father testified he had secured a three-bedroom apartment with his girlfriend and her children, but he has not provided a lease in his name, or other documentation, and the home is in need of repairs.
Based on this evidence, which the trial court included as unchallenged findings of fact in the order terminating respondent-father's parental rights, the trial court determined respondent-father did not demonstrate reasonable progress, and willfully left the juveniles in foster care or placement outside the home for more than 12 months. We agree the record supports the finding that respondent-father's parental rights should be terminated pursuant to N.C. Gen. Stat. § 7B-1111(a)(2).
We need not address the second issue on appeal, whether the trial court erred by concluding that grounds existed to terminate his parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), as "[a] finding of any one of the enumerated grounds for termination of parental rights under [N.C. Gen. Stat. §] 7B-1111 is sufficient to support a termination." In re Humphrey , 156 N.C. App. at 540, 577 S.E.2d at 426.
B. Best Interests Determination
Respondent-father next contends the trial court abused its discretion when it determined that adoption was in the minor children's best interests because it failed to make findings about: (1) the impact of adoption by separate households on the minor children's sibling bonds; and (2) the likelihood of Dianne and Cindy being adopted if therapy does not correct their demonstrated sexualized behaviors.[3] We disagree.
After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest. ... In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2017). Respondent-father does not contend the trial court failed to make findings in accordance with the requirements of subsection (a)(1) through (a)(5). Instead, he contends that the trial court abused its discretion because it did not elect to consider the impact of adoption by separate households on the minor children's sibling bonds, nor the likelihood of Dianne and Cindy being adopted if their therapy is unsuccessful, as "[a]ny relevant consideration" under N.C. Gen. Stat. § 7B-1110(a)(6).
However, several of the unchallenged findings of fact reflect that the trial court considered the adoptability of the children, as well as their current placements and mental health needs. Specifically, the trial court found as follows: two of the children are in pre-adoptive placements in Granville County, and the other two are in pre-adoptive placements in Durham County. Mallory and her younger half-sister's needs are being met by their foster parents, with whom they share a "strong, healthy bond[,]" and that "if recruitment were necessary there is a high probability that they would be adopted." Dianne and Cindy are "very young, healthy children" and, although "[t]hey have demonstrated sexualized behaviors[,]" they "are being treated for that and defiant behaviors but there is a high probability that they will be adopted." Overall, the trial court found that all of "[t]he children are young and adoptable and have no medical or developmental issues that would be a barrier to adoption."
Moreover, nothing in the record indicates a bond between the children would be affected by the termination of parental rights or that Dianne and Cindy's adoptability will be affected by the outcome of their mental health treatment. Neither does any evidence support respondent-father's speculation that treatment may not be successful to address the minor children's behavior. Further, we note that " '[t]he trial court is not required to make findings of fact on all the evidence presented, nor state every option it considered' in arriving at its disposition under N.C. Gen. Stat. § 7B-1110." Matter of A.L.L. , --- N.C. App. ----, ----, 802 S.E.2d 598, 609 (2017) (citation omitted).
Thus, we see no indication the trial court failed to address "[a]ny relevant consideration" under the catch-all provision of N.C. Gen. Stat. § 7B-1110(a)(6). The court evaluated the enumerated statutory factors and the minor children's needs and circumstances, and concluded the termination of parental rights was in the best interests of the minor children. Therefore, the trial court did not abuse its discretion.
III. Conclusion
For the forgoing reasons, we affirm the order terminating respondent-father's parental rights.
AFFIRMED.
Report per Rule 30(e).
Judges BRYANT and DILLON concur.

Pseudonyms are used to protect the identities of the juveniles and for ease of reading.

The mother is not a party to this appeal, and her youngest daughter is not a subject of this appeal.

We note respondent-father's brief incorrectly refers to Cindy and Mallory as the two children receiving therapy for sexualized behaviors. We nonetheless review this argument as to Dianne and Cindy, who it is otherwise clear respondent-father intended to refer to in making this argument.