IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-751

Filed 16 May 2023

Swain County, No. 22CVD1120

IN THE MATTER OF: D.C. AND J.C.

Appeal by respondent-father and respondent-mother from an order entered 22 June 2022 by Judge Kristina Earwood in Swain County District Court. Heard in the Court of Appeals 26 April 2023.

> *Edward Eldred for respondent-appellant father.*
>
> *J. Lee Gilliam Assistant Parent Defender, and Wendy C. Sotolongo, Parent Defender, for respondent-appellant mother.*
>
> *Justin B. Greene for petitioner-appellee Swain County Department of Social Services.*
>
> *Womble Bond Dickinson LLP, by Theresa M. Sprain, for appellee guardian ad litem.*

FLOOD, Judge.

Respondent-Mother and Respondent-Father (collectively, "Respondent-Appellants") appeal from an order terminating their parental rights of their two minor children. We conclude the trial court obeyed the mandate of our Supreme Court on remand and affirm the trial court's order terminating parental rights.

## I. Facts and Procedural Background

In early 2016, Respondent-Appellants were caring for their three biological

children, Diana, Julia, and Dylan, and three unrelated children, Ryan, Charlotte, and Ava.[1] *In re D.C.*, 262 N.C. App. 372, 2018 WL 5796710, at *1 (N.C. App. and Date). On 4 April 2016, Ryan was admitted to the emergency room with "life-threatening, non-accidental injuries." *Id.* The attending doctor noted Ryan to be "dirty, covered with scabs and bruises, and severely malnourished[,]" and concluded that Ryan was "minutes to an hour away from death at the time he arrived[.]" *Id.* On 5 April 2016, the Swain County Department of Social Services ("DSS") filed petitions alleging Ryan was abused, and the five other children were neglected by Respondent-Appellants. All six children were taken into custody by DSS that same month. *Id.* at *3. Respondent-Appellants were subsequently indicted for, *inter alia*, felony child abuse against Ryan, and they were both arrested in June 2016. Respondent-Appellants were released on bond soon after.

On 20 July 2017, the trial court entered an order adjudicating Respondent-Appellants' biological children (the "children") neglected. Six months later, in January 2018, the trial court entered a disposition order that eliminated reunification with Respondent-Appellants as part of the children's permanent plans. Respondent-Appellants appealed both the adjudication and disposition orders. *Id.* at *3.

On 6 November 2018, this Court entered an opinion where we: (1) affirmed the adjudication order; (2) vacated the disposition order because the trial court erred by

---

[1] Pseudonyms have been used to protect the identities of the minor children.

not making the "necessary *specific* finding . . . that a court of competent jurisdiction has determined that aggravating circumstances exist based on the enumerated list to cease reunification efforts"; and (3) remanded for further proceedings. *Id.* at *8–9. On 16 July 2019, the trial court entered a disposition order pursuant to this Court's remand, and again ordered elimination of reunification efforts from the children's permanent plan. On 18 July 2019, the trial court entered a permanency planning order, and in January 2020, the trial court entered a permanency planning review order whereby the children's permanent plan was set to adoption.

On 10 June 2020, DSS filed a petition to terminate Respondent-Appellants' parental rights in Dylan and Julia,[2] and the trial court heard the petition on 7 December 2020 and 2 February 2021. On 29 March 2021, the trial court entered a termination of parental rights order, with its findings of fact made by a preponderance of the evidence. Respondent-Appellants appealed the trial court's order to our Supreme Court, arguing the trial court used the wrong standard of proof. *In re J.C.*, 380 N.C. 738, 2022-NCSC-37, ¶ 1.

On 28 September 2021, DSS filed a motion to remand to the trial court for a "correction" of the court's statement regarding the standard of proof used to make its findings of fact, and our Supreme Court denied the motion. *Id.* ¶ 5 n. 6. On 18 March 2022, our Supreme Court reversed and remanded the trial court's order "for its

---

[2] Pre-hearing, DSS dismissed the petition as to Diana because she "was expected to reach the age of majority prior to the final resolution of this matter."

consideration of the record before it in order to determine whether DSS demonstrated by clear, cogent, and convincing evidence that one or more statutory grounds exist to permit termination of parental rights." *Id.* ¶ 16. Our Supreme Court also provided:

> Without commenting on the amount, strength, or persuasiveness of the evidence contained in the record, we merely conclude that we cannot say that remand of this case for the trial court's consideration of the evidence in the record utilizing the proper "clear, cogent, convincing" standard of proof would be "futile," so as to compel us to conclude that the record of this case is insufficient to support findings which are necessary to establish *any* of the statutory grounds for termination.

*Id.* ¶ 16 (emphasis in original) (internal citation omitted).

The hearing on remand was held on 20 April 2022. Following statements by counsel, the trial court provided:

> It was fully the [c]ourt's intention to find by clear, cogent and [convincing evidence] standard. And I'm going to do that. I have reviewed the file. I have reviewed the evidence. I've also reviewed the Supreme Court's judgment and opinion.
>
> And so that was the [c]ourt's intent. It was a clerical error, so if you will correct that and submit the appropriate order.

On 22 June 2022, the trial court again entered a written order terminating Respondent-Appellants' parental rights and concluded there were two sufficient grounds for termination:

> [(1)] that [Respondent-Appellants] have willfully and not due solely to poverty, left the juvenile(s) in a placement[] outside of the home for a period of greater than twelve months, and [(2)] that [Respondent-Appellants] have

neglected the minor child(ren) within the meaning of N.C. [Gen. Stat. §] 7B-101 and N.C. [Gen. Stat. §] 7B-1111, and said neglect has continued through the date of the filing of the petition(s) for termination of parental rights and that there is a likelihood of continuing neglect of the minor child(ren).

The trial court also noted in its order that it made its findings of fact—which were largely the same as those in the 29 March order—"using the clear, cogent and convincing evidence standard, following the remand of this matter from the Honorable Supreme Court of North Carolina." The trial court's adjudicatory findings of fact include, *inter alia*:

21. That [Respondent-Appellants'] case plan(s) include the following provisions, to wit:

i) Complete a mental health and substance abuse assessment and follow the recommendations of the assessment

ii) Complete parenting classes

iii) Obtain stable housing and employment

iv) Address the juveniles' educational needs

v) Participate in random drug screens

vi) Participate in individual counseling

22. That [Respondent-Appellants] completed mental health and substance abuse assessments in April of 2016. There were no recommendations associated with the assessments at that time.

23. That [DSS] requested that [Respondent-Appellants] complete an in-person parenting class of at least [twelve]

hours. [Respondent-Appellants] together completed an online parenting class totaling four hours, which [DSS] (and the [c]ourt) have found to be unsatisfactory. [Respondent-Appellants] have never enrolled in or completed an in-person parenting class.

24. That [Respondent-Appellants] were notified on numerous occasions that their completion of an online parenting class was not satisfactory toward the completion of their case plan and the [c]ourt's Order on Disposition (Finding #44) reflects that the parents had prior notice of this as early in this case as November of 2017.

25. That [DSS] felt that the parenting classes would be necessary in this case based upon the history of abuse and neglect that occurred in [Respondent-Appellants'] home and as set forth in the [c]ourt's Order of Adjudication.

26. That [Respondent-Appellants] were enrolled in individual counseling in April of 2016 through November of 2016. [DSS] received an update in November 2016 that stated that [Respondent-Appellants] were engaging and participating in individual therapy.

27. That [DSS] received no further updates regarding [Respondent-Father's] engagement with therapy past November of 2016.

28. That [Respondent-Appellants] completed a child and family evaluation in April of 2016. The recommendations of that evaluation were that [Respondent-Appellants] should complete parenting classes, engage in individual therapy, and complete a capacity to parent evaluation. One of the stated goals of [Respondent-Appellants'] engagement in therapy was to complete individual therapy to acknowledge why the juveniles[] came into custody of [DSS].

. . . .

33. That neither of [Respondent-Appellants] have had any

visitation with the juveniles since June of 2016. Visitation occurred for approximately two months at the initial stages of this case. [Respondent-Appellants] were thereafter arrested for felony and misdemeanor child abuse, and [Respondent-Appellants'] bond restrictions prevented them from having any contact with the juveniles. The juvenile court subsequently ordered that [Respondent-Appellants] should have no contact with the juveniles unless recommended by the juveniles' counselor.

. . . .

36. That [the foster care social worker] has had numerous meetings and conversations with [Respondent-Appellants] and has encouraged them to complete their case plans and to re-enroll in therapy.

37. That [Respondent-Mother] has told the social worker that she does not trust or need counseling and has chosen not to participate [in] counseling. [Respondent-Appellants] have never signed any sort of release to allow [DSS] access to their counseling records, and [Respondent-Appellants'] counselor(s) never provided any specific details about [Respondent-Appellants'] counseling sessions to [DSS].

. . . .

48. That [Dylan] and [Julia] have more needs (physical, mental and psychological) than other children of their age. The history of this case indicates that [Respondent-Appellants] lack the skills necessary to address the juveniles['] particular needs and further that [Respondent-Appellants] have not availed themselves of services such as parenting classes or therapy which would better equip them to address the juveniles' needs.

. . . .

69. That [Dylan] does not often speak about [Respondent-Appellants] in counseling. On the occasions when he has brought them up, he has stated that he does not feel safe

with them, and they did not keep him safe.

. . . .

71. That [Dylan] continues to be afraid of his parents and has expressed those feelings to his counselor.

72. That [Dylan] will often try to change subjects or avoid the topic of [Respondent-Appellants].

73. That Ms. Farr[, Dylan's counselor,] has discussed future contact and visitation with [Dylan]. [Dylan] has repeatedly stated that he does not want to have contact with his parents. . . .

74. That [Dylan's counselor] believes that [Dylan] having contact with [Respondent-Appellants] would lead [Dylan] to being hospitalized again. She expressed concern that seeing [Respondent-Appellants] would lead to an increase in his fear and anxiety that could lead to a psychiatric break.

75. That [Dylan's counselor's] professional opinion is . . . that contact with [Respondent-Appellants] would cause significant harm to [Dylan]. [Dylan's counselor's] opinion is based on her past observations and therapy of [Dylan] and his past responses.

Additionally, the 22 June order's dispositional findings section provides, in

relevant part:

9. That [Dylan] does not have a bond with [Respondent-Appellants], however he does have some positive memories of [Respondent-Father].

. . . .

11. That [Dylan's counselor has opined] . . . that having the parental rights of [Dylan's] parents terminated would bring [Dylan] a sense of relief. He has said in the past that

he was afraid that his biological parents would take him away from [his foster family].

. . . .

15. That [Dylan's counselor] opined . . . that it would not be appropriate or in the best interests of [Dylan] to have ongoing contact with his parents.

. . . .

41. That the continued parental rights of [Respondent-Appellants] are a barrier to the adoption(s) of the juveniles and a barrier to the accomplishment of the permanent plan for the juvenile(s).

. . . .

52. That the [c]ourt makes the above findings following a review of the [R]ecord, the evidence presented and the argument(s) of counsel. The court would find that following an application of the clear, cogent, and convincing evidence standard, the evidence could show that it is in the best interest[s] of the juveniles, [Dylan] and [Julia,] . . . that the parental rights of [Respondent-Appellants] be terminated.

. . . .

101. That [Respondent-Appellants] have willfully, and not due solely to poverty, left the minor children in placement outside off the home for more than twelve (12) months.

Respondent-Father and Respondent-Mother each timely filed notice of appeal.

## II. **Jurisdiction**

Respondent-Appellants' appeals are properly before this court pursuant to

N.C. Gen. Stat. §§ 7A-27(b)(2), 7B-1001(a)(7), and 7B-1002(4). *See* N.C. Gen. Stat.

§§ 7A-27(b)(2), 7B-1001(a)(7), 7B-1002(4) (2021).

## III. <u>Analysis</u>

Respondent-Appellants each argue the trial court did not obey the Supreme Court's Mandate. Respondent-Mother further argues the trial court's findings and conclusions regarding grounds for terminating her parental rights in Dylan do not meet a clear, cogent, and convincing standard, and the trial court abused its discretion when it made findings contrary to the evidence and relied on those findings in making its decision.

## A. Supreme Court's Mandate

Respondent-Father and Respondent-Mother each argue the trial court did not strictly follow the Supreme Court's Mandate by failing to reconsider whether DSS met its evidentiary burden under the clear, cogent, and convincing standard. Respondent-Father specifically contends the trial court disobeyed the Supreme Court's Mandate by failing to "reconsider" the evidence, and by failing to make a new best interests determination. Respondent-Mother specifically contends the Supreme Court's Mandate required the trial court to do more than correct a clerical error in its 29 March order, and the trial court's attempt to correct a clerical error was insufficient to comply with the Mandate. We address both Respondent-Father's and Respondent-Mother's contentions.

This Court's interpretation of an appellate court's mandate on remand to the trial court is an issue of law reviewable *de novo*. *See State v. Hardy,* 250 N.C. App.

225, 232, 792 S.E.2d 564, 568 (2016); *see also State v. Watkins*, 246 N.C. App. 725, 730, 783 S.E.2d 279, 282 (2016). An appellate court's mandate "is binding upon the trial court and must be strictly followed without variation or departure." *McKinney v. McKinney*, 228 N.C. App. 300, 302, 745 S.E.2d 356, 358 (2013). "[I]t is well-established that in discerning a mandate's intent, the plain language of the mandate controls." *In re Parkdale Mills*, 240 N.C. App. 130, 135, 770 S.E.2d 152, 156 (2015). Trial court judgments that are "inconsistent and at variance with, contrary to, and modified, corrected, altered or reversed prior mandates of the Supreme Court . . . [are] unauthorized and void." *Lea Co. v. N.C. Bd. of Transp.*, 323 N.C. 697, 699, 374 S.E.2d 866, 868 (1989).

In *Parkdale*, this Court heard an appeal from a lower tribunal's decision on remand, where we had instructed the lower tribunal "to conduct further hearings *as necessary*." *Parkdale*, 240 N.C. App. at 135, 770 S.E.2d at 156 (emphasis in original). We held, "[w]here a directive of this Court instructs a lower tribunal that the lower tribunal shall conduct hearings *as necessary*, the plain language of such a directive indicates that the lower tribunal may, but is not required to, conduct additional hearings." *Id.* at 131, 770 S.E.2d at 154 (emphasis in original) (internal quotation marks omitted).

Here, our Supreme Court's Mandate provided that the trial court was to "review and reconsider the record before it by applying the clear, cogent, and convincing standard to make findings of fact[,]" and that "remand of this case to the

trial court for such an exercise is appropriate, unless the record of this case is insufficient to support findings which are necessary to establish *any* of the statutory grounds for termination." *In re J.C.*, ¶ 15 (emphasis in original) (internal quotation marks omitted). Upon remand, the trial court provided in its written order that it made its findings of fact "[f]ollowing a review of the record, the evidence presented and the argument(s) of counsel[,]" and "using the clear, cogent and convincing evidence standard, following the remand of this matter from the Honorable Supreme Court of North Carolina."

Respondent-Father contends that "[b]y instructing the trial court to make a *new adjudicatory ruling*, the Supreme Court necessarily instructed the trial court to conduct a new disposition hearing." As set forth in *Parkdale*, however, the mandate of an appellate court is to be interpreted by its plain language, and even where the mandate requires a trial court to "conduct further hearings *as necessary*," the trial court "may, but is not required to, conduct additional hearings." *Parkdale*, 240 N.C. App. at 131, 770 S.E.2d at 154 (emphasis in original). The plain language of our Supreme Court's Mandate, here, contains no such stipulation as to the trial court conducting a further disposition hearing. Rather, the Mandate directed the trial court to "review and reconsider the *record before it* by applying the clear, cogent, and convincing standard to make findings of fact." *In re J.C.*, ¶ 15 (emphasis added). Further, our Supreme Court concluded that it "cannot say that remand of this case for the trial court's consideration of the evidence in the record utilizing the proper

'clear, cogent, convincing' standard of proof would be 'futile,'" and that the record is not necessarily "insufficient to support findings which are necessary to establish *any* of the statutory grounds for termination." *Id.* ¶ 16 (emphasis in original). Accordingly, it was not incumbent upon the trial court to hear additional evidence or conduct further hearings, and the court properly reviewed and reconsidered "the record before it." *See id.* ¶ 15; *see Parkdale*, 340 N.C. App. at 131, 770 S.E.2d at 154.

We note that the trial court stated during the 20 April hearing that "[i]t was fully the [c]ourt's intention to find [facts] by [the] clear, cogent and [convincing evidence] standard[,]" and its use of the incorrect standard "was a clerical error." Respondent-Mother contends "[t]his was not consistent with the Supreme Court's [M]andate, which called for the trial court to 'reconsider' the evidence." The Record demonstrates, however, that the court obeyed the plain language of the Supreme Court's Mandate by reviewing and reconsidering the record before it under the clear, cogent, and convincing evidence standard. *See In re J.C.*, ¶ 15. Whether the court's use of the incorrect standard in the 29 March order was a "clerical error" has no bearing on our analysis**,** and the trial court did not err.

## B. Clear, Cogent, and Convincing Evidence

Respondent-Mother argues in her brief that neither ground found by the trial

court for parental rights termination in Dylan met the "clear and convincing"[3] evidence threshold. Specifically, Respondent-Mother contends she made reasonable progress under the circumstances to correct the conditions that led to the removal of Dylan, and there was no clear, cogent, and convincing evidence that supported the trial court's finding of continuing neglect. We disagree.

"The issue of whether a trial court's adjudicatory findings of fact support its conclusions of law that grounds existed to terminate parental rights pursuant to N.C. [Gen. Stat.] § 7B-1111(a) is reviewed de novo by the appellate court." *In re M.R.F.*, 378 N.C. 638, 2021-NCSC-111, ¶ 7 (internal quotation marks omitted) (cleaned up). "A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding." *In re A.L.*, 378 N.C. 396, 2021-NCSC-92, ¶ 16. "[A]n adjudication of any single ground for terminating a parent's rights under N.C. [Gen. Stat.] § 7B-1111(a) will suffice to support a termination order." *In re M.S.*, 378 N.C. 30, 2021-NCSC-75, ¶ 21 (citation and internal quotation marks omitted).

Under statute, a court may terminate parental rights upon a finding that:

> The parent has willfully left the juvenile in foster care or placement outside the home for more than [twelve] months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the

---

[3] Although Mother argues the trial court did not meet the "clear and convincing" standard of evidence, the Supreme Court's Mandate set forth that the trial court's findings must meet the "clear, cogent, and convincing" standard, and our analysis therefore turns on the latter. *See In re J.C.*, ¶ 15.

removal of the juvenile. No parental rights, however, shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.

N.C. Gen. Stat. § 7B-1111(a)(2) (2021); *see In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020). "Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort." *In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (2001); *see also In re J.S.*, 374 N.C. at 815, 845 S.E.2d at 71 ("A respondent's prolonged inability to improve her situation, despite some efforts in that direction, will support a finding of willfulness regardless of her good intentions, and will support a finding of lack of progress sufficient to warrant the termination of parental rights under [N.C. Gen. Stat. §] 7B-1111(a)(2).") (internal quotation marks omitted) (cleaned up). For a respondent-parent's noncompliance with her case plan to support the termination of her parental rights, however, "there must be a nexus between the components of the court-approved case plan with which the respondent failed to comply and the conditions which led to the child's removal from the parental home." *In re J.S.*, 374 N.C. at 816, 845 S.E.2d at 71 (quoting *In re B.O.A.*, 372 N.C. 372, 384, 831 S.E.2d 305, 314 (2019)); *see also In re Y.Y.E.T.*, 205 N.C. App. 120, 131, 695 S.E.2d 517, 524 ("[T]he case plan is not just a check list. The parents must demonstrate acknowledgement and understanding of why the juvenile entered DSS custody as well as changed behaviors.").

Here, the children came into the custody of DSS in April 2016, and Respondent-Appellants were arrested in June 2016. Respondent-Appellants have been out on

bond since that time, and their bond prohibited them from having contact with their children. Dylan, therefore, has been placed outside the home for more than twelve months pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). *See* N.C. Gen. Stat. § 7B-1111(a)(2) (2021).

Respondent-Appellants' case plan set forth requirements that they participate in parenting classes totaling twelve hours, and in individual counseling sessions. DSS presented evidence that Respondent-Appellants willfully failed to fulfill either of these two requirements, despite many opportunities to do so. Respondent-Appellants elected to participate in an online parenting class totaling four hours, and were repeatedly instructed by DSS that this was insufficient to fulfill the parenting class requirement of the case plan. After November 2016, DSS received no further update regarding Respondent-Appellants attending individual counseling or therapy, despite DSS's continued encouragement of Respondent-Appellants to do so. Further, Respondent-Mother communicated to the social worker that she does not trust or need counseling and has chosen not to participate in counseling. The completion of both individual counseling and parenting classes was important under the circumstances, as one of the stated goals for Respondent-Appellants in completing these two, specific, case plan requirements was to "acknowledge why the juveniles[] came into custody of [DSS]." *See In re J.S.*, 374 N.C. at 816, 845 S.E.2d at 71; *see also In re Y.Y.E.T.*, 205 N.C. App. at 131, 695 S.E.2d at 524.

The foregoing evidence demonstrates an ability on the part of Respondent-

Mother to show reasonable progress in her case plan and, not on account of poverty, an unwillingness to make the effort. *See McMillon*, 143 N.C. App. at 410, 546 S.E.2d at 175. As the aim of these two case plan requirements was to "acknowledge why the juveniles[] came into custody of [DSS][,]" there is a nexus between these components of the case plan and the conditions leading to Dylan's removal from Respondent-Appellants' home. *See In re J.S.*, 374 N.C. at 816, 845 S.E.2d at 71; *see also In re Y.Y.E.T.*, 205 N.C. App. at 131, 695 S.E.2d at 524. Accordingly, the trial court's adjudicatory finding that Respondent-Mother willfully left the juvenile in foster care or placement outside the home for more than twelve months was supported by clear, cogent, and convincing evidence, and the trial court had sufficient grounds to terminate Respondent-Mother's parental rights in Dylan. *See* N.C. Gen. Stat. § 7B-1111(a)(2) (2021). The trial court's adjudicatory finding pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) is, on its own, sufficient to support termination of Respondent-Mother's parental rights, and we need not assess Respondent-Mother's neglect argument. *See In re M.S.*, ¶ 21.

### C. Best Interests of the Child

Respondent-Mother argues the trial court abused its discretion when it made erroneous findings concerning Dylan's likelihood of adoption, which "possibly influence[d] the court's ultimate best interests determination."

"With regard to the trial court's assessment of a juvenile's best interests at the dispositional stage, . . . we review that decision solely for abuse of discretion." *In re*

*R.D.*, 376 N.C. 244, 248, 852 S.E.2d 117, 122 (2020) (citation and internal quotation marks omitted). "[A]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a seasoned decision." *Id.* at 248, 852 S.E.2d at 122.

In making a determination on the best interests of a juvenile:

> After an adjudication that one or more grounds for terminating a parent's rights exist, the [trial] court shall determine whether terminating the parent's rights is in the juvenile's best interest. The court may consider any evidence, including hearsay evidence as defined in [N.C. Gen. Stat. §] 8C-1, Rule 801, that the court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile. In each case, the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2021). Our Supreme Court has provided the likelihood of adoption criterion is not dispositive as to a best interests determinations, and "the trial court need not find a likelihood of adoption in order to terminate parental

rights." *In re H.A.J.*, 377 N.C. 43, 2021-NCSC-26, ¶ 28 (internal quotation marks omitted); *see also In re A.R.A.*, 373 N.C. 190, 200, 835 S.E.2d 417, 424 (2019) ("[T]he absence of an adoptive placement for a juvenile at the time of the termination hearing is not a bar to terminating parental rights.") (alteration in original) (citation omitted).

As explained above, the Supreme Court's Mandate did not require the trial court to conduct additional hearings or receive new evidence on remand. *See In re J.C.*, ¶ 15. Accordingly, it was proper for the court to consider the evidence "in the record before it" to make a best interests determination under N.C. Gen. Stat. § 7B-1110(a). *Id.* ¶ 15.

The trial court, in its written order, made relevant findings based on clear, cogent, and convincing evidence concerning Dylan and regarding subsections (3) and (4) of N.C. Gen. Stat. § 7B-1110(a). The current permanent plan for Dylan is "adoption with a concurrent plan of guardianship." The trial court made adjudicatory findings of fact 69, 71, 72, 73, 74, and 75, and dispositional findings of fact 9, 11, 15, and 41, all of which were based on the evidence of Dylan's counseling sessions and are relevant to either the accomplishment of Dylan's permanent plan or the bond between Dylan and Respondent-Appellants. *See* N.C. Gen. Stat. § 7B-1110(a)(3)–(4) (2021).

Even if there is a lack of current, relevant evidence supporting a likelihood of Dylan's adoption, the trial court's conclusion that it would be in Dylan's best interests to terminate Respondent-Appellants' parental rights was supported by findings made

by clear, cogent, and convincing evidence. It cannot be said that the trial court's decision was "manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a seasoned decision." *In re R.D.*, 376 N.C. at 248, 852 S.E.2d at 122. We hold the trial court did not abuse its discretion in concluding the termination of Respondent-Mother's parental rights was in Dylan's best interests.

## IV. <u>Conclusion</u>

After careful review, we conclude the trial court: obeyed the Supreme Court's mandate to review and reconsider the record before it under the clear, cogent, and convincing standard; found sufficient grounds to terminate Respondent-Appellants' parental rights in Dylan; and did not abuse its discretion in making its best interests determination. For the foregoing reasons, we affirm the trial court's order terminating the parental rights of Respondent-Appellants.

AFFIRMED.

Judges DILLON and WOOD concur.