IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-494

Filed 31 December 2024

Rowan County, No. 21JT000027

IN THE MATTER OF: H.R.P.

Appeal by respondent-parents from order entered 19 February 2024 by Judge Beth Dixon in Rowan County District Court. Heard in the Court of Appeals 6 November 2024.

*Martin, Van Hoy & Raisbeck, LLP, by Cindy Ellis, for petitioner-appellee.*

*BJK Legal, by Benjamin J. Kull, for respondent-appellant father.*

*Patricia M. Propheter, for respondent-appellant mother.*

FLOOD, Judge.

Respondent-Parents appeal from the trial court's order terminating their parental right as to H.R.P. ("Harry").[1] On appeal, Respondent-Parents argue the trial court erred because (A) several findings of fact are not supported by clear, cogent, and convincing evidence, and (B) grounds do not exist to terminate their parental rights under N.C. Gen. Stat. § 7B-1111(a)(1) or (2). Upon review, we conclude the trial court's findings of fact are supported by competent evidence, and while only one

---

[1] A pseudonym is used to protect the juvenile's identity, pursuant to N.C.R. App. P. 42(b).

ground is necessary to support the termination of parental rights, the findings of fact support the conclusion that grounds exist to terminate Respondent-Parents' parental rights under N.C. Gen. Stat. § 7B-1111(a)(1) or (2). Accordingly, we affirm the trial court's order.

## I. **Factual and Procedural Background**

Harry was born on 4 August 2020 to Respondent-Parents. At the time of Harry's birth, Rowan County Department of Social Services ("DSS") received a report that Respondent-Mother tested positive for opiates, oxycodone, and marijuana, and that Harry tested positive for oxycodone, hydrocodone, hydromorphone, and THC. On 19 February 2021, DSS filed a juvenile petition, and that same day, obtained nonsecure custody of Harry. Following a hearing on 1 April 2021, the trial court entered an order (the "Adjudication Order") adjudicating Harry a neglected juvenile, finding, *inter alia*, Respondent-Parents had substance abuse issues, failed to participate in services offered by DSS, and failed to engage in visitation with Harry. Following another hearing on 5 August 2021, the trial court entered an order (the "Permanency Planning Order") as to Petitioner, who is Harry's paternal aunt, and her husband,[2] to be granted guardianship of Harry. The Permanency Planning Order provided, *inter alia*, for Harry to have supervised visitation with Respondent-Parents "for a minimum of once a month for two hours at the Visitation Station."

---

[2] Petitioner's husband, who was Harry's paternal biological uncle, passed away in 2023 during the pendency of this matter.

On 21 February 2023, Petitioner and her husband filed a petition to terminate Respondent-Parents' parental rights as to Harry (the "Petition"), alleging grounds to terminate their parental rights existed based on neglect, willful failure to make reasonable progress, and dependency, under N.C. Gen. Stat. § 7B-1111(a)(1), (2), and (6). The Petition included, attached as Exhibit B, the Permanency Planning Order. This matter came on for hearing 3 August 2023 and 2 October 2023.

At the hearing, Petitioner testified that Respondent-Parents had never visited Harry at the Visitation Station. Petitioner also testified that Respondent-Mother had last visited Harry on 25 December 2021, Christmas day, when Respondent-Parents brought presents for Harry, and that Respondent-Parents "were high[, ]were there for [ten] minutes[,] and then they left." Petitioner further testified that: Respondent-Father had occasional, short visits with Harry; Respondent-Mother does not communicate with Petitioner about Harry's well-being; and Respondent-Parents do not provide any support for Harry. The trial court, upon request by Petitioner, took judicial notice of the Adjudication Order.

After Petitioner presented evidence, Respondent-Parents both moved to dismiss the Petition for insufficient evidence of grounds to terminate their parental

rights. The trial court allowed the motions as to N.C. Gen. Stat. § 7B-1111(a)(6), but denied the motions as to N.C. Gen. Stat. § 7B-1111(a)(1) and (2).[3]

After moving to dismiss, Respondent-Parents both testified. Respondent-Father testified as to his limited visitation with Harry, and that he had last used illegal substances in 2020. Respondent-Mother testified that she "was going to" set up visitation at the Visitation Center, but "stopped trying" when she "was told" Petitioner would not bring Harry, and that she had attempted to facilitate public visitation with Harry, but Petitioner had refused to meet in a public place. Respondent-Mother testified that she had last visited Harry "[p]robably early 2022, maybe late 2021." Respondent-Mother also testified that she was no longer using drugs and had completed thirty-seven or thirty-eight hours of a forty-hour substance abuse treatment class but was only missing the "exit exam." Finally, Respondent-Mother testified that she "was trying to get off of all drugs completely," as of March 2022, and that the last time she "touched anything" was 7 March 2022, when she stopped using illegal substances "[o]n [her] own."

Following the hearing, the trial court entered an order on 19 February 2024, finding that grounds existed to terminate Respondent-Parents' parental rights under

---

[3] The trial court noted, as to N.C. Gen. Stat. § 7B-1111(a)(2), that "the child has been in the care for guardianship and out of the home for more than [twelve] months without anything happening, nothing else coming back into the court on a motion that no contact really at all with the guardian [occurred.]" The trial court further noted, as to N.C. Gen. Stat. § 7B-1111(a)(1), "that the fact that there's been no contact since December, or in at least over a year, that the ongoing no contact could support that continued neglect."

N.C. Gen. Stat. § 7B-1111(a)(1) and (2). The trial court made, in relevant part, the following findings of fact:

8. Respondent[-P]arents completed none of the court ordered services offered by [DSS].

9. Respondent[-P]arents have a history of substance abuse and domestic violence, for which neither of have sought treatment.

10. Respondent[-M]other testified that she "got herself clean on her own" during a period when she and [R]espondent[-F]ather were no longer in a relationship.
. . . .

12. Respondent[-F]ather has never parented any of his children. All his children reside with [] Petitioner.

13. Respondent[-Mother] has never parented this minor child, her only child.

14. Respondent[-P]arents have no relationship with the minor child.

15. Respondent[-P]arents have not attempted to reach out to [] Petitioner.

16. [] Petitioner has had the same phone number since prior to the birth of the minor child and has never blocked either parent from calling or texting her.

17. Both [R]espondent[-P]arents testified to having maintained gainful employment but could not afford the cost of gasoline to exercise visitation with the minor child in a supervised setting.
. . . .

19. Respondent[-F]ather never contacted the supervised visitation resource to complete orientation for his visits to begin.

20. Respondent[-M]other testified that she was planning to complete orientation but then stopped trying.

21. Respondent[-Mother] has made no attempt to visit the minor child in over a year.
. . . .

23. No attempts have been made by [R]espondent[-Parents] to seek a relationship with the minor child.

Respondent-Parents both filed notices of appeal; Respondent-Mother cited to statutory authority under N.C. Gen. Stat. § 7B-1001(a)(4), and Respondent-Father cited to statutory authority under N.C. Gen. Stat. § 7B-1001(a1)(a).

## II. <u>Jurisdiction</u>

"Any party entitled to an appeal . . . may take appeal by filing notice of appeal with the clerk of superior court in the time and manner set out in" N.C. Gen. Stat. § 7B-1001(b) and (c) (2023). N.C.R. App. P. 3.1(b). "Compliance with the requirements for entry of notice of appeal is jurisdictional." *State v. Oates*, 366 N.C. 264, 266, 732 S.E.2d 571, 573 (2012). Failure to comply with the requirements of Rule 3.1(b) is, therefore, a jurisdictional defect requiring dismissal. *See Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 193–94, 197, 657 S.E.2d 361, 362–63, 365 (2008) ("A jurisdictional default, therefore, precludes the appellate court from acting in any manner other than to dismiss the appeal.").

> [A] mistake in designating the judgment, [however,] or in designating the part appealed from if only a part is designated, should not result in loss of the appeal as long as the intent to appeal from a specific judgment can

be *fairly inferred* from the notice and the appellee is not misled by the mistake.

*Evans v. Evans,* 169 N.C. App. 358, 363, 610 S.E.2d 264, 269 (2005) (citation omitted and emphasis in original); *see also In re W.K.*, 376 N.C. 269, 272, 852 S.E.2d 83, 87 n. 4 (2020) (reviewing the merits of the respondent-father's appeal where the parties, in part, "fully participated in the appeal," and the "[r]espondent-father's inclusion of the correct lower-court numbers and his characterization of the order at issue as terminating his parental rights ma[d]e sufficiently clear his intent to appeal the orders").

Here, Respondent-Parents each cited to incorrect statutory authority in their notices of appeal; Respondent-Mother cited to N.C. Gen. Stat. § 7B-1001(a)(4), which concerns appeals from orders that change the "legal custody of a juvenile[,]" and Respondent-Father cited to N.C. Gen. Stat. § 7B-1001(a1)(a), which was repealed on 1 July 2021, and when effective, permitted appeal from an order terminating a parent's rights directly to the North Carolina Supreme Court. *See* N.C. Gen. Stat. § 7B-1001(a)(4); N.C. Gen. Stat. § 7B-1001(a1) (repealed 2021). Respondent-Parents, however, both correctly appealed to the North Carolina Court of Appeals, and both notices of appeal correctly indicated the order terminating their parental rights, entered 19 February 2024.

Although Rule 3.1 does not specifically require citation to a statutory authority, *see* N.C.R. App. P. 3.1(b), even if Respondent-Parents' notices of appeal are

jurisdictionally defective, the intent to appeal from the order to terminate Respondent-Parents' parental rights "can be *fairly inferred* from the notice[s,]" and Petitioner was not misled by the mistake, particularly because Petitioner has "fully participated in the appeal[.]" *See Evans*, 169 N.C. App. at 363, 610 S.E.2d at 269; *In re W.K.*, 376 N.C. at 272, 852 S.E.2d at 87 n. 4. Accordingly, Respondent-Parents' notices of appeal will not result in a "loss of the appeal[,]" and we therefore review Respondent-Parents' claims on the merits. *See Evans*, 169 N.C. App. at 363, 610 S.E.2d at 269; *see also In re W.K.*, 376 N.C. at 272, 852 S.E.2d at 87 n. 4.

## III. <u>Standard of Review</u>

"The standard of review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re Shepard*, 162 N.C. App. 215, 221, 591 S.E.2d 1, 6 (2004) (citation omitted). "A trial court's findings of fact are binding on appeal if supported by competent evidence. Unchallenged findings of fact are also binding on appeal." *Durham Hosiery Mill Ltd. v. Morris*, 217 N.C. App. 590, 592, 720 S.E.2d 426, 427 (2011). The trial court's "judgment will not be disturbed on appeal . . . even though the evidence might sustain findings to the contrary." *Markham v. Markham*, 53 N.C. App. 18, 22, 279 S.E.2d 905, 908 (1981). "[R]ecitations of the testimony of each witness do not constitute findings of fact by the trial judge absent an indication concerning whether the trial court deemed the relevant portion of the testimony credible." *In re A.E.*, 379 N.C. 177, 185, 864 S.E.2d

487, 495 (2021) (citation omitted) (cleaned up).

"Conclusions of law made by the trial court are reviewable de novo on appeal." *In re K.S.*, 380 N.C. 60, 64, 868 S.E.2d 1, 4 (2022). "Under a *de novo* review, [this Court] considers the matter anew and freely substitutes its own judgment for that of the trial court." *Id.* at 64, 868 S.E.2d at 4 (citation omitted) (cleaned up).

## IV. <u>Analysis</u>

On appeal, Respondent-Parents argue the trial court erred because (A) several findings of fact are not supported by clear, cogent, and convincing evidence, and (B) grounds do not exist to terminate their parental rights under N.C. Gen. Stat. § 7B-1111(a)(1) or (2). We address each argument, in turn.

### A. Findings of Fact

Respondent-Parents first argue that several findings of fact are not supported by clear, cogent, and convincing evidence. Respondent-Father challenges Findings of Fact 8, 9, 10, 12, 15, 17, 20, and 23. Respondent-Mother challenges only Finding of Fact 7, which is a conclusion of law that we review de novo. *See In re K.J.M.*, 288 N.C. App. 332, 339, 886 S.E.2d 589, 595 (2023) ("As a general rule, the labels 'findings of fact' and 'conclusions of law' employed by the lower tribunal in a written order do not determine the nature of our standard of review because if the lower tribunal labels as a finding of fact what is in substance a conclusion of law, we review that 'finding' as a conclusion de novo." (citation omitted) (cleaned up)). Except for Findings of Fact 10, 17, and 20, which will be disregarded, we disagree that the challenged

Findings of Fact are not supported by competent evidence.

First, we address Finding of Fact 8, that "Respondent[-P]arents completed none of the court ordered services offered by [DSS]"; there is competent Record evidence that Respondent-Father had not completed an "Adult Holistic Assessment[,]" and that Respondent-Parents had "not participated in any recommended services or treatment" prior to entry of the Permanency Planning Order. Respondent-Father presented no evidence he had completed any court ordered services offered by DSS since entry of the Permanency Planning Order. To the extent that Respondent-Mother testified that she completed thirty-seven or thirty-eight hours of a forty-hour substance abuse treatment class but was only missing the "exit exam[,]" such evidence further supports Finding of Fact 8 that Respondent-Mother had not "completed" any of the court ordered services offered by DSS. Respondent-Mother did testify that she completed the parenting program and had a "certificate for it"; however, the certificate is not in the Record on appeal. *See* N.C.R. App. P. 9(a) ("In appeals from the trial division . . . review is solely upon the record on appeal."). Finding of Fact 8 is therefore supported by competent Record evidence, and is binding on appeal. *See Morris*, 217 N.C. App. at 592, 720 S.E.2d at 427.

Next, as to Finding of Fact 9, that "Respondent[-P]arents have a history of substance abuse and domestic violence, for which neither of have sought treatment[,]" competent Record evidence was presented to the trial court that Respondent-Parents

both repeatedly used illegal substances, and that Respondent-Parents were under the influence of drugs when visiting Harry in 2021. When Harry was born, both Harry and Respondent-Mother tested positive for drugs. Although Respondent-Mother testified that "[she] was trying to get off of drugs completely" as of March 2022, and that the last time she "touched anything" was on 7 March 2022, when she stopped using substances "on [her] own[,]" such evidence does not demonstrate Respondent-Mother "sought treatment" for her substance abuse issues. As stated above, Respondent-Mother completed a substantial portion of her substance abuse treatment program, yet did not complete the program; furthermore, the Record indicates Respondent-Mother sought substance abuse treatment only "while DSS had legal custody of [Harry]." Finally, Respondent-Mother testified that she had not "received any professional substance abuse treatment" besides the classes she took.

To the extent Respondent-Parents testified that they no longer used illegal substances, and their testimonies contradict competent Record evidence of their substance abuse issues, the trial court's "judgment will not be disturbed on appeal . . . even though the evidence might sustain findings to the contrary." *See Markham*, 53 N.C. App. at 22, 279 S.E.2d at 908. While the Record does not demonstrate a history of domestic violence, there is competent Record evidence that Respondent-Parents had a history of substance abuse and did not seek treatment; the portion of Finding of Fact 9 concerning substance abuse is therefore binding on appeal. *See Morris*, 217 N.C. App. at 592, 720 S.E.2d at 427.

Next, as to Finding of Fact 15, that "Respondent[-P]arents have not attempted to reach out to [] Petitioner[,]" Petitioner testified that Respondent-Mother had not called or texted her, or communicated about Harry's well-being. Although competent Record evidence indicates Respondent-Father occasionally visited Harry, Petitioner testified that Respondent-Father did not reach out to communicate about Harry's well-being. Again, to the extent that Respondent-Parents' testimonies conflict with Petitioner's testimony, such as Respondent-Mother's testimony that she repeatedly but unsuccessfully tried to communicate with Petitioner, the existence of contrary evidence is insufficient to overcome the trial court's judgment. *See Markham*, 53 N.C. App. at 22, 279 S.E.2d at 908. Additionally, Finding of Fact 16, that "Petitioner has had the same phone number since prior to the birth of the minor child and has never blocked either parent from calling or texting her[,]" is not challenged on appeal by Respondent-Parents, and is thus binding on appeal. *See Morris*, 217 N.C. App. at 592, 720 S.E.2d at 427. There is competent Record evidence that Respondent-Parents had not attempted to reach out to Petitioner, and Finding of Fact 15 is therefore binding on appeal. *See id.* at 592, 720 S.E.2d at 427.

As to challenged Findings of Fact 12 and 23—that "Respondent[-F]ather has never parented any of his children. All his children reside with Petitioner[,]" and "[n]o attempts have been made by[ R]espondent[-Parents] to seek a relationship with the minor child"—Respondent-Father testified that he has two other children besides Harry who reside with Petitioner. Competent Record evidence was presented to the

trial court that Respondent-Parents made "no attempt to maintain a bond with [Harry] through visitation[,]" and that Respondent-Father did not engage in services to reunify with his other children. Moreover, evidence was presented that Respondent-Parents failed to engage in regular visitation with Harry, and that Respondent-Father did not make himself available "to develop a visitation plan."

Although the Record indicates Respondent-Father occasionally visited Harry since 2021, again, the existence of contrary evidence is insufficient to overcome the trial court's judgment. *See Markham*, 53 N.C. App. at 22, 279 S.E.2d at 908. Further, Finding of Fact 14, that "Respondent[-P]arents have no relationship with the minor child[,]" suggests Respondent-Parents did not attempt to seek a relationship with Harry, and because Finding of Fact 14 is not challenged on appeal by Respondent-Parents, it is binding on appeal. *See Morris*, 217 N.C. App. at 592, 720 S.E.2d at 427. Finding of Facts 12 and 23 are, therefore, supported by competent Record evidence, and are binding on appeal. *See id.* at 592, 720 S.E.2d at 427.

As to challenged Findings of Fact 10, 17, and 20, they only recite Respondent-Parents' testimonies without an "indication concerning whether the trial court deemed the relevant portion of the testimony credible." *See In re A.E.*, 379 N.C. at 185, 864 S.E.2d at 495 (citation omitted) (cleaned up). Because these Findings of Fact are mere recitations of testimony, they will be disregarded "in evaluating the validity of the trial court's termination order." *See id.* at 185, 864 S.E.2d at 495.

Accordingly, disregarding Findings of Fact 10, 17, and 20, the challenged

Findings of Fact, along with the remaining unchallenged findings of fact, are supported by competent Record evidence, and are thus binding on appeal. *See Morris*, 217 N.C. App. at 592, 720 S.E.2d at 427.

### B. Conclusions of Law

Respondent-Parents next argue the findings of fact do not support the trial court's conclusions of law that grounds exist to terminate Respondent-Parents' rights under N.C. Gen. Stat. § 7B-1111(a)(1) or (2). We disagree.

### 1. Grounds under N.C. Gen. Stat. § 7B-1111(a)(1)

Grounds exist to terminate parental rights when "[t]he parent has abused or neglected the juvenile." N.C. Gen. Stat. § 7B-1111(a)(1) (2023). "[W]hen a child has been separated from their parent for a long period of time, the petitioner must prove (1) prior neglect of the child by the parent and (2) a likelihood of future neglect of the child by the parent." *In re D.W.P.*, 373 N.C. 327, 339, 838 S.E.2d 396, 405 (2020). The trial court may consider a prior adjudication of neglect in a proceeding to terminate parental rights, but "the trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *In re A.E.*, 379 N.C. at 200, 864 S.E.2d at 505 (citation omitted) (cleaned up). The trial court "must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re R.L.D.*, 375 N.C. 838, 841, 851 S.E.2d 17, 20 (2020) (citation omitted).

"A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re R.L.R.*, 381 N.C. 863, 869, 874 S.E.2d 579, 586 (2022) (citation omitted). "[A] parent's compliance with his or her case plan[, however,] does not preclude a finding of neglect." *Id.* at 869, 874 S.E.2d at 586 (citation omitted). Further, "[n]eglect . . . can include the total failure to provide love, support, affection, and personal contact." *In re D.J.D.*, 171 N.C. App. 230, 239–40, 615 S.E.2d 26, 33 (2005).

In *In re M.Y.P.*, the trial court terminated the respondent-father's rights to the minor child pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), concluding "that there was a high probability of repetition of neglect should [the minor child] be returned to [the respondent-father's] care and custody." 378 N.C. 667, 677–78, 862 S.E.2d 773, 781 (2021). On appeal, the North Carolina Supreme Court found that, where the respondent-father, in part, failed to complete his case plan, failed to consistently visit the minor child, and failed to address substance abuse issues, grounds existed to terminate the respondent-father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). *Id.* at 677–78, 862 S.E.2d at 781.

Here, the findings of fact demonstrate there is a likelihood of future neglect by both Respondent-Parents. First, Respondent-Parents do not challenge the trial court's Findings of Fact 19 and 21, which describe Respondent-Parents' failures to visit Harry; these Findings of Fact are therefore binding on appeal. *See Morris*, 217 N.C. App. at 592, 720 S.E.2d at 427. Next, just as the respondent-father in *In re*

- 15 -

*M.Y.P.* failed to complete his case plan, failed to address substance abuse issues, and failed to consistently visit the minor child, so here do the findings of fact demonstrate Respondent-Parents failed to complete the court ordered services offered by DSS, did not seek treatment for their substance abuse issues, and failed to either set up visitation with, or failed to visit, Harry in at least one year. *See* 378 N.C. at 677-78, 862 S.E.2d at 781; *see also In re R.L.R.*, 381 N.C. at 869, 874 S.E.2d at 586. Just as our Supreme Court concluded the existence of these factors supported the trial court's determination that there was a "high probability of repetition of neglect[,]" so here do we find the trial court's findings of fact support a determination of future neglect by Respondent-Parents. *See In re M.Y.P.*, 378 N.C. at 677–78, 862 S.E.2d at 781.

The trial court's findings of fact also demonstrate a complete lack of a relationship by Respondent-Parents with Harry: the binding findings of fact show Respondent-Father never parented Harry, and Respondent-Parents never sought out a relationship with Harry; the unchallenged findings of fact show Respondent-Mother has never parented Harry, and Respondent-Parents have no relationship with Harry. The trial court made ample findings of fact that demonstrate Respondent-Parents did not provide "love, support, affection [to], and personal contact [with,]" Harry, and this complete lack of a relationship further supports a finding of a likelihood of future neglect. *See In re D.J.D.*, 171 N.C. App. at 240–41, 615 S.E.2d at 33 ("The evidence supports the findings of a lack of a relationship between the children and their father, and the likelihood of future neglect.").

- 16 -

Finally, the trial court considered Respondent-Parents' circumstances not just from the time of the Adjudication Order, but also from the time of the Permanency Planning Order, and from subsequent testimony presented at the termination of parental rights' hearing. The trial court therefore considered changed circumstances "occurring between the period of past neglect and the time of the termination hearing." *See In re R.L.D.*, 375 N.C. at 841, 851 S.E.2d at 20; *see also In re A.E.*, 379 N.C. at 200, 864 S.E.2d at 505. Accordingly, because there is a showing of prior neglect, and the trial court's binding findings of fact support a likelihood of future neglect, grounds exist to terminate Respondent-Parents' parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). *See In re D.W.P.*, 373 N.C. at 339, 838 S.E.2d at 405.

### 2. Grounds under N.C. Gen. Stat. § 7B-1111(a)(2)

Grounds also exist to terminate parental rights when "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2). The trial court must determine "whether (1) a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and (2) the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child." *In re Z.A.M.*, 374 N.C. 88, 95, 839 S.E.2d 792, 797 (2020). "Willfulness is established when the respondent had the ability to show reasonable

progress, but was unwilling to make the effort." *In re McMillon*, 143 N.C. App. 402, 410, 546 S.E.2d 169, 175 (2001). "[T]he nature and extent of the parent's *reasonable progress* [] is evaluated for the duration leading up to the hearing on the motion or petition to terminate parental rights." *In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020) (citation omitted).

Here, Respondent-Parents' failure to complete their court ordered services offered by DSS, and failure to visit Harry for at least one year prior to the termination of parental rights hearing, despite having the ability to call or text Petitioner, support the trial court's conclusion that Respondent-Parents had willfully left Harry in a placement outside the home for over twelve months without making reasonable progress to correct the conditions that led to Harry's removal. *See In re Z.A.M.*, 374 N.C. at 95, 839 S.E.2d at 797; *see also In re McMillon*, 143 N.C. App. at 410, 546 S.E.2d at 175 (concluding that the respondent-mother's failure to comply with her case plan to be reunified with the minor child, and her failure to visit the minor child for eighteen months prior to the termination hearing, supported the trial court's finding that the respondent-mother had willfully left the minor child in foster care). Respondent-Parents' failures to parent or seek a relationship with Harry also demonstrate Respondent-Parents were "unwilling to make the effort" to make progress on the conditions that led to Harry's removal. *See In re McMillon*, 143 N.C. App. at 410, 546 S.E.2d at 175; *see also In re Z.A.M.*, 374 N.C. at 95, 839 S.E.2d at 797.

The trial court's binding findings of fact demonstrate Respondent-Parents' actions were willful in that they had the ability to make reasonable progress and correct the conditions that led to Harry's removal but were "unwilling to make the effort." *See In re McMillon*, 143 N.C. App. at 410, 546 S.E.2d at 175; *see also In re Z.A.M.*, 374 N.C. at 95, 839 S.E.2d at 797.

Accordingly, because Respondent-Parents willfully left Harry with Petitioner and have not made reasonable progress under the circumstances, grounds exist to terminate Respondent-Parents' rights under N.C. Gen. Stat. § 7B-1111(a)(2). *See In re Z.A.M.*, 374 N.C. at 95, 839 S.E.2d at 797. We conclude, therefore, that while "a finding of only one ground is necessary to support a termination of parental rights," the findings of fact support the conclusion that grounds exist to terminate Respondent-Parents' parental rights under N.C. Gen. Stat. § 7B-1111(a)(1) or (2). *See In re A.R.A.*, 373 N.C. 190, 194, 835 S.E.2d 417, 421 (2019).

## V. **Conclusion**

Upon review, we conclude the trial court's findings of fact are supported by competent evidence, and while only one ground is necessary to support the termination of parental rights, the findings of fact support the conclusion that grounds exist to terminate Respondent-Parents' parental rights under N.C. Gen. Stat. § 7B-1111(a)(1) or (2). Accordingly, we affirm the trial court's order terminating Respondent-Parents' parental rights.

AFFIRMED.

Judge GORE concurs.

Judge THOMPSON dissents in separate opinion.

No. COA24-494 – *In re H.R.P.*

THOMPSON, Judge, dissenting.

The majority's determination that "the trial court's findings of fact are supported by competent evidence, and the findings of fact support the conclusion that grounds exist to terminate Respondent-Parents' parental rights under N.C. Gen. Stat. § 7B-1111(a)(1) and (2)" is erroneous, and also ignores the mandatory considerations imposed on the trial court when terminating parental rights in circumstances—such as this case—where a minor child has been outside of the custody of their parents for a long period of time in *In re D.W.P.,* 373 N.C. 327, 838 S.E.2d 396 (2020), and *In re Z.A.M.*, 374 N.C. 88, 839 S.E.2d 792 (2020).

Upon my careful review, I would conclude that the trial court's determination that the aforementioned grounds exist to terminate respondent-parents' parental rights was not supported by competent evidence; the findings of fact are unsupported by competent evidence; therefore, the conclusions of law are erroneous. The trial court's findings of fact are entirely unsupported by competent evidence, and the findings of fact *do not* support the conclusions of law that grounds exist to terminate respondent-parents' parental rights under N.C. Gen. Stat. § 7B-1111(a)(1) and (2).[4] The majority's holding is contrary to well-established North Carolina juvenile law,

[4] As will be illustrated in detail below, the trial court *first* erred in denying respondents' motion to dismiss the termination of parental rights petition due to insufficiency of the evidence.

and is an egregious encroachment on the constitutionally protected status of a parent in North Carolina. For this reason, I dissent.

**A. N.C. Gen. Stat. § 7B-1111(a)(1)**

N.C. Gen. Stat. § 7B-1111(a)(1) allows for termination of parental rights when "[t]he parent has abused or neglected the juvenile." N.C. Gen. Stat. § 7B-1111(a)(1) (2023). However, in circumstances where "a child has been separated from their parent for a long period of time, the petitioner *must* prove (1) prior neglect of the child by the parent *and* (2) a *likelihood of future neglect of the child by the parent.*" *D.W.P.*, 373 N.C. at 339, 838 S.E.2d at 405 (emphases added).

"When determining whether future neglect is likely, the trial court *must* consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *Z.A.M.*, 374 N.C. at 95, 839 S.E.2d at 797 (emphasis added). Our Supreme Court "has recognized that a termination of parental rights for neglect *cannot be based solely on past conditions that no longer exist.*" *D.W.P.*, 373 N.C. at 339, 838 S.E.2d at 405 (emphasis added). "At the adjudication stage, *the petitioner bears the burden* of proving by clear, cogent, and convincing evidence that one or more grounds for termination exist under [N.C. Gen. Stat.] § 7B-1111(a)." *In re R.D.*, 376 N.C. 244, 248, 852 S.E.2d 117, 122 (2020) (emphasis added). Finally, it is critical, fundamental even, that, "[e]*vidence must* support findings; findings *must* support conclusions; conclusions *must* support the judgment. Each step of the progression *must* be taken by the trial judge, in logical

sequence; each link in the chain of reasoning *must* appear in the order itself." *In re B.F.N.*, 381 N.C. 372, 376, 873 S.E.2d 291, 295 (2022) (emphases added). Each link in the chain did not appear in this case.

Here, at the termination hearing, when considering respondents' motion to dismiss due to insufficiency of the evidence, the trial court acknowledged that "*there was no information presented as to the current circumstances of the parents . . . .*" (Emphasis added). As respondent-father notes, petitioner "presented no evidence regarding the current circumstances of *either* parent[,] . . . no evidence tending to show that [r]espondent-[f]ather continued to have any issues with drugs or drug use[,]" and petitioner even acknowledged at the termination hearing that she had "no idea" about respondent-father's "current sobriety."

Indeed, petitioner presented *no evidence* whatsoever that could be construed as evidence of a likelihood of future neglect by respondent-mother or respondent-father, despite binding precedent from our Supreme Court that, when "a child has been separated from their parent for a long period of time, the petitioner must prove (1) prior neglect of the child by the parent and (2) a *likelihood of future neglect of the child by the parent.*" *D.W.P.*, 373 N.C. at 339, 838 S.E.2d at 405 (emphasis added). While petitioner presented evidence of *prior* neglect of Harry, based upon

respondents' *past* drug use, petitioner presented *no evidence* of a likelihood of future neglect of Harry by respondents.[5]

Specifically, the trial court heard no evidence whatsoever to suggest that respondents *were still using drugs*, although drug use by respondents *was the condition* that led to Harry's removal from their custody. Our Supreme Court has held that, "termination of parental rights for neglect cannot be based solely on past conditions that no longer exist[,]" *D.W.P.*, 373 N.C. at 339, 838 S.E.2d at 405, and there is simply no evidence presented to support the trial court's conclusion of law that Harry's past neglect, *is likely to continue in the future.*

Moreover, when determining whether future neglect is likely, the trial court "*must* consider evidence of changed circumstances occurring between the period of past neglect, and the time of the termination hearing." *Z.A.M.*, 374 N.C. at 95, 839 S.E.2d at 797 (emphasis added). The trial court did not, therefore, *I* will conduct this

---

[5] The majority takes issue with the fact that respondents did not have contact with Harry for over a year, asserting that this continued distance could support a finding of future neglect. However, this simply disregards *the only competent evidence presented on the matter*, testimony from respondent-mother that she had attempted to visit with Harry at the visitation center, "but then [respondent-mother] was told that [petitioner] would not even bring him, so I stopped trying." Respondent-mother also testified that she "tried to text and call [petitioner] on numerous occasions" to no avail, and that petitioner had blocked respondent on social media. Respondent-mother further testified that she "left [petitioner] alone since [petitioner Timothy Bradburn] died because I know there's no hope." When asked whether there had "ever been any effort [made] to you or have you made any effort to try to meet in a public place[,] to meet at a park or a restaurant or anything like that[,]" respondent-mother replied, "[y]es, I've tried and [petitioner] refused." Because petitioner would not "let [respondent-mother] see [Harry]" respondent-mother actually "filed a motion, a formal motion in court asking for increased visitation . . . ." Finding of Fact Twenty-One—like Findings of Fact Fifteen, Sixteen, and Twenty-Three—is simply not supported by competent evidence. In fact, it contradicts the only competent evidence proffered.

*mandatory* consideration of changed circumstances. Specifically, as to changed circumstances between the period of Harry's neglect and the time of the termination hearing, respondent-mother offered testimony that she had completed forty hours of outpatient drug treatment, maintained a stable residence and employment, and critically, that she had not used drugs since 6 March 2022.

It is *entirely* unclear how the trial court could have conducted the *mandatory* consideration of changed circumstances—as necessary to terminate parental rights based upon the ground of neglect when a minor child has been separated from the parent for a long period of time—absent *any* showing of *what the current circumstances of the respondent-parents are*. Therefore, I would conclude that petitioner's evidence was insufficient to carry petitioner's burden of proving by clear, cogent, and convincing evidence, that grounds existed to terminate respondents' parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1).

**B. N.C. Gen. Stat. § 7B-1111(a)(2)**

A trial court may terminate parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) in situations where "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2). Again, "[a]t the adjudication stage, *the petitioner bears the burden* of proving by clear, cogent, and convincing evidence that one or more grounds

for termination exist under [N.C. Gen. Stat.] § 7B-1111(a)." *R.D.*, 376 N.C. at 248, 852 S.E.2d at 122 (emphasis added).

Here, as discussed at length above, petitioner made *no showing* whatsoever that respondent-mother had not made reasonable progress in correcting the conditions that led to Harry's removal. In fact, as noted above, respondent-mother *had* made progress in correcting the condition that led to Harry's removal from her care—her drug use. The trial court's conclusion of law that respondent-mother has not made reasonable progress in correcting the conditions that led to Harry's removal was wholly unsupported by clear, cogent, or convincing evidence based upon the evidentiary record before our Court. In fact, it is *entirely inconsistent* with the *only competent evidence* presented to the trial court on this ground, respondent-mother's testimony. The majority's assertion, based upon the trial court's Finding of Fact Nine, that respondent parents "did not seek treatment for their substance abuse issues" is simply not correct; respondent-mother did.

Moreover, as to respondent-father, Rowan County DSS became involved with the family due to respondent-father and respondent-mother's drug use. As discussed at length above, petitioner presented no evidence *whatsoever* about respondent-father's drug use—the condition that led to the removal of Harry—at the termination of parental rights hearing. In fact, petitioner testified that she had "no idea" about respondent-father's "current sobriety."

Absent *any showing* regarding respondent-father's progress, or lack thereof, in correcting the conditions that led to the removal of Harry—respondent-father's drug use—the trial court simply *could not* have made the *mandatory* consideration of whether respondent-father had made "reasonable progress under the circumstances" in correcting the conditions that led to the removal of Harry, as is *required* by our caselaw.

This is an egregious misapplication of the law, with profound consequences for the relationship between a young child and his biological parents. The right to parent is constitutionally protected, and petitioner fell drastically short of meeting her burden of proving that grounds exist to terminate parental rights by clear, cogent, and convincing evidence. This termination of parental rights *should not* have happened.

For the aforementioned reasons, I would conclude that the trial court erred in terminating respondents' parental rights because the trial court erred in denying respondents' motion to dismiss due to insufficiency of the evidence; the trial court heard no competent evidence regarding the current conditions of respondents, as is necessary to terminate parental rights on the alleged grounds in this case. None of the findings of fact are supported by competent evidence regarding the status of respondent-parents' *at the termination hearing*, and for this reason, I dissent.